KASPER, Admr, Etc v OBERLIN COLLEGE

Ohio Appeals, 9th Dist, Lorain Co

No 703.   Decided June 1, 1934

Mark A. Copeland, Cleveland, Paul E. Lies, Cleveland, and Harold S. Ewing, for plaintiff in error.

Stevens & Stevens, Elyria, and Fauver & Fauver, Elyria, for defendant in error.

## OPINION

By STEVENS, J.

It is the well-settled law of Ohio that, upon a motion to direct a verdict in favor of defendant upon the opening statement of counsel for plaintiff, the court is called upon to determine a legal question only, and in so doing is neither permitted to weigh evidence nor to determine any question of fact whatsoever. The court is required to assume that everything said in the opening statement is true, and that every reasonable inference favorable to plaintiff which may be drawn therefrom is true, leaving for determination by the court only the question as to whether such facts and inferences, unexplained, undenied, and unaffected by any other facts, entitle the plaintiff to a judgment in law.

In the instant case, it being conceded that defendant is a charitable institution, the question is presented as to the liability of a charitable institution, as such, for failure to comply with a statutory requirement.

Omitting the parts of the statement of counsel which have no bearing on the questions involved, and also that part wherein it was admitted that the defendant was a chartable institution, the statement is as follows:

"Ladies and Gentlemen of the Jury:

"In the orderly trial of a lawsuit to the jury it becomes the duty of counsel for plaintiff to state the facts which the plaintiff expects to show in evidence from the witness stand. It has already been stated that Emil Kasper, a young man who was a student in the conservatory of music in Oberlin College, was killed by a fall in an elevator shaft in the building. That accident occurred on the 9th day of December, 1931. This action is brought by his administrator, his father, for the benefit of the next of kin of this boy. The action is against Oberlin College, and, of course, as you all surmised, the ground of the action is the negligence of the college for the injury.

"We might make a short statement as to Emil Kasper. His father and mother came to this country when he was still a baby. His father is an iron molder and worked in an iron foundry. At a very early age, in fact when he was about seven years old, he showed very plain indications of being musicially inclined. His father and mother immediately arranged to have him take music. He took lessons on the violin for several years, first with one instructor, then at musical school, and then, finally, when he was fifteen years old, he started to take lessons on the piano. His progress was rapid, the lessons which he had were competent; he showed great devotion to music, even at that early age. He graduated from Elyria high school, at the same time he graduated from a school of music in Cleveland. During all of that period he had been assiduously practicing upon these instruments, the violin and the piano, and shortly after he graduated from high school, in fact it was the following fall, he entered the Oberlin Conservatory of Music. That was in 1929 and he was then nineteen years old. He had become an accomplished student of Spanish and French, I understand, and perhaps other languages. He had taken these up in connection with the study of his music and the pursuit of his education. The course which he laid out for himself was a five-year course in the conservatory there in Oberlin. * * *

"Along in December of 1931 this boy was practicing with several other boys for a recital for a broadcast over the radio. On the 9th day of December there had been a recital in Warner Hall, the conservatory of music. Emil had taken a young lady to that recital and had gone to take her home. There were three other boys that were to be with him in this party. He came back and it was very shortly after he came back that this accident happened. There is an elevator in Warner Hall and this is a college building. * * *

"We expect to show this boy fell down the elevator shaft, that the appliances which are required by law to be had in connection with an elevator of this kind were not present, *. * * that as a result of the failure to have the appliances which they should have had, this accident happened, and as a result of that damage, the death, and consequent lawsuit. We expect to be able to show that this has been a substantial damage to his father, to his mother and to his sister. That, in a word, ladies and gentlemen, is our case and what we expect the evidence to show.

"There was in connection with this elevator a key or an instrument which was used in the elevator to open the elevator doors. I mention that because it will be a matter of considerable discussion before his lawsuit is over. That key, and contrary to recognized practices, was kept in an exposed position, where the students and employees of Oberlin College, or at least the conservatory of music, knew where it was; that these students had used the key, had used the elevator constantly, with the knowledge of the officers and officials of Oberlin College, and from the evidence which we will develop along this line we expect to show that there was negligence in the maintenance of this elevator. The evidence will further show that on this night this key had been used for the purpose of opening a gate of the elevator enclosure, that the elevator had been to a higher floor, the third floor, I believe, the key had been placed in its ordinary position. Consequently, the appliance which was there and the appliances which these students were even invited to use, were not of the character that should have been there in order to meet the requirements of that situation.

"That, in a general way, is our case. * * * "In addition thereto, I desire to say that we expect to show that the negligence about which we have spoken was the 'sole cause of this accident. We expect further to show that there was no contributing negligence on the part of the plaintiff in this case. * * *"

Counsel's claim in this court is that the defendant, a charitable institution, is liable because its negligence consisted in the failure to observe a statutory requirement.

It will be observed that at no place in plaintiff's opening statement was it claimed by counsel for plaintiff that the lawful requirement which he now claims defendant violated, and the violation of which it was claimed caused the death of plaintiff's decedent, was passed for the benefit of plain-

tiff's decedent; and the Supreme Court of Ohio, in the case of **Railway Co. v Phillips, 81 Oh St 453, at p. 462,** said:

"In an action for neglect of duty it is not enough for the plaintiff to show that the defendant neglected a duty imposed by statute, and that he would not have been injured if the duty had been performed, but to entitle him to recover, he must further show that such duty was imposed for his benefit, or was one which the defendant owed to him for his protection and security, from the particular loss or injury of which he complains"—citing Smith v Tripp, 13 R. I. 152, and O'Donnell v The Providence & Worcester R. R. Co., 6 R. I. 211.

It was the duty of the trial court, as it is the duty of this court, to take judicial notice of the existence and contents of any pertinent statute enjoining a duty upon the defendant in favor of plaintiff's decedent. **The Hadfield-Penfield Steel Co. v Sheller, 108 Oh St 106,** syllabus 1.

The only statute of which this court is aware, and the only one upon which counsel for plaintiff places reliance, which might possibly have application to the instant case, is **§12600-59, GC,** which provides in part as follows:

"* * * All elevator doors shall have electrical interlocking attachments to prevent doors being opened, unless car is at floor level, and all cars are to be equipped with electrical interlocking safety gates. * * *"

Here is a specific requirement, constituting a part of a penal statute; and ordinarily a violation thereof would, under the Ohio rule, constitute negligence per se, if the plaintiff's decedent was within the class for whose benefit the statute was passed, and his injury was of such character as the statute was designed to prevent. The rule is stated in 20 R.C.L., "Negligence," §33, p. 38, as follows:

"In a majority of jurisdictions it is stated as a general rule of law that the violation of a penal or criminal statute is actionable negligence, or as frequently stated is 'Negligence per se' or 'negligence as a matter of law.' And this is true although the defendant may also be subject to a penalty provided by the enactment. The principle comprehensively stated is that where a statute or municipal ordinance imposes upon any person a special duty for the protection or benefit of others, if he neglects to perform that duty **he is liable to those**

for whose protection. or benefit it was imposed for any injuries of the character which the statute or ordinance was designed to prevent, and which were proximately produced by such neglect."

See also—

Railway Co. v Workman, Admr., 66 Oh St 509, at p. 542.

Erie R. R. Co. v McCormick, 69 Oh St 45, at p. 52.

Dalton v Cleveland Elec. Illuminating Co., 30 O.C.A. 24, at p. 27.

Gillespie v N. Y. C. R. R. Co. 35 OLR 622, syllabus 2.

Wm. F. Borck, Admr. v Cinci. Gas & Elec. Co., 3 OLR 546.

Denton v Railway Co., 90 Kan. 51, syllabus 1; 47 L.R.A. (N.S.) 820.

L.R.A. 1915E, p. 502, Note II and cases cited.

It must be admitted that plaintiff's decedent, being a student of the defendant college, was within the class for whose benefit the statute in question was passed.

The question of whether the injuries of plaintiff's decedent were of. a character such as the statute was designed to prevent, presents a much more difficult and perplexing question, and the solution of that question necessitates a close scrutiny of the legislative history and exact contents of not only the section involved, but of the entire contents of the state building code as it applies to schools and colleges.

Title II of part 2 of the state building code, dealing with the subject of school buildings, is contained in §§12600-44 to 12600-72, GC, inclusive.

It is apparent from a reading of those sections that they treat of three principal subjects—i.e., (1) fire prevention and protection, (2) sanitation, and (3) general hygiene.

It should be kept in mind that, at the time of the enactment of the building code, the requirements for the safety of users of elevators, including their erection, maintenance and operation, was confided by the legislature to the Industrial Commission of Ohio, which had authority to make rules and regulations in reference thereto having the force and effect of laws passed by the legislature.

In Vol 101 O. L., p. 202, is found the preliminary enactment looking toward the creation of a state building code, the preamble of which reads as follows:

"Whereas, The state departments of workshops and factories, state fire marshal and state board of health have met with opposition and embarrassment in the performance of the duties pertaining to those departments with respect to the construction, safety and sanitary conditions of public and other buildings, and

"Whereas, Such opposition and embarrassment have arisen because of inadequate statutory provisions relating to those subjects, and

"Whereas, Great loss of life, health and property have resulted because of the lack of proper statutory building regulations, now therefore."

In Vol. 102 O. L., p. 586, is found the state. building code, and at p. 628 thereof the original §12600-59, GC, as follows:

"Elevators shall be enclosed in standard fire walls, or by fireproof walls, ceilings and floors, and all openings to the enclosure shall be covered by standard fire doors for elevators."

Sec 12600-59, GC, was amended in 1923, as shown by 110 O. L. 357, as follows:

"Elevators shall be enclosed in standard fire walls, or by fireproof walls, ceilings and floors, and all openings to the enclosure shall be covered by standard fire doors for elevators.

"In senior high schools over three stories in height, there shall be provided at least one elevator for every five hundred pupils (or fraction thereof) on the third floor and the. floors above, but in no case shall a four-story senior high school building have less than two elevators, and a five-story senior high school building not less than three elevators, and a six-story senior high school building not less than four elevators.

"The floor area of the elevators installed under the above provisions shall not be less than thirty-six square feet each.

"Not more than one elevator shall be placed in any one shaft.

"Thresholds to elevator shaft openings shall be of nonslip material.

"All elevator doors shall have electrical interlocking attachments to prevent doors being opened, unless car is at floor level, and all cars are to be equipped with electrical interlocking safety gates.

"All rules and requirements of the industrial commission of Ohio, relating to elevators, shall be complied with.

"Section 2. That original §§12600-45 and 12600-59 GC be, and the same are hereby repealed."

Applying to the above section, as amended, the required canons of statutory construction, we are led to the conclusion that

the section was designed and intended to prevent injuries arising by reason of hazards incidental to fire, and not to create civil liability for injuries arising through the use of the elevator under circumstances not attributable to fire or other emergency.

It will be noted that the requirement of electrical interlocking attachments upon elevators is added to the then existing requirement of fireproof walls and fire doors for elevators, and that theretofore there was nothing in said statute relating to elevators that indicated an intention to guard against injury to persons making use of elevators in the ordinary and customary way and not connected with a fire or other emergency, and that as a part of said enactment it was apparently provided that, for the safety of those using elevators in the ordinary and customary manner, the rules and requirements of the Industrial Commission of Ohio relating to elevators, which include the construction, inspection, maintenance and operation of elevators, "shall be complied with."

It seems apparent to us that the statute in question was designed for protection in connection with fire or other emergency, and that the rules and regulations of the Industrial Commission were designed for the protection of those using the elevator as plaintiff's decedent was using it.

But in any event, said rules and regulations of the Industrial Commission having the force and effect of acts of the legislature, should be considered in connection with said statute in determining whether the opening statement of counsel stated facts showing a specific statutory duty owed by defendant to plaintiff's decedent, said duty designed to prevent injuries of a specific character, which duty defendant failed to perform.

Reference was made in the statement of counsel for plaintiff to a key by which the doors of said elevator were unlocked by plaintiff's decedent, or those with him; in said statement it was stated that said key was kept in an exposed position and that plaintiff's decedent and those with him at the time of the accident, as well as other students and employees of the college, had been in the habit of using said key for the purpose of opening said elevator doors, and that, on this evening, they got the same from its customary position; that the elevator had been left at a higher floor, and that when the doors were opened with said key, plaintiff's decedent fell in and was killed; and that therefore there was negligence in the maintenance of said elevator. In that connection, the attention of the court has been directed by defendant's counsel to Bulletin 110, page 174, of the department of industrial relations, relating to "specific safety requirements covering the construction, inspection, maintenance and operation of elevators," in which, under subdivision 12, the following appears:

"All elevator door locks shall be arranged to receive key from corridor on room side to permit the doors being opened from the corridor or room side, in case of emergency."

This requirement was in force and applicable in the instant case.

This court is required to take judicial notice of the rules and regulations issued by the Industrial Commission concerning safety requirements, to the same extent as it judicially notices statutory enactments, and from a consideration of the above regulation, we conclude that defendant, in having a key present with which to unlock the doors of said elevator, was merely complying with a lawful requirement, and that the presence of said key in the place where it was stated that it was, did not contravene any regulation of the commission or any statutory provision, the commission at that time not having designated any place where said key should be kept.

Considering said rules and regulations of the commission in connection with said statute, what is the most favorable construction that may be given to the opening statement of counsel?

It is true that counsel stated that "the appliances which are required by law to be had in connection with an elevator of this kind were not present" and that, as a result of the failure to have the appliances the accident happened.

That is a statement more in the nature of a conclusion than of fact, and the facts as detailed in other parts of the statement are that the elevator was locked, that a key with which to unlock it was provided in accordance with a specific requirement, and that, but for the use of such key the accident could not have happened.

We do not see how the character of the lock could have been the proximate cause of the accident, so long as a key to unlock it was specifically required and that requirement was literally complied with; the statement, when considered in connection with the law, is susceptible of but one interpretation, it seems to us, and that is that the proximate cause of the accident was the negligence of the defendant in permitting the use of the key by the students

and employees of the college, and that was not the violation of any statute or rule or regulation which has come or has been called to our attention.

It is the judgment of this court that the statute under consideration was not passed for the purpose of preventing plaintiff's decedent from being injured in the particular manner in which he was injured, and that therefore no civil liability can arise as against the defendant because of a violation of said section.

This view is strengthened by the fact that, as early as 1913, the Industrial Commission had been vested with authority to make rules and regulations governing the construction, operation and inspection of elevators, and the promulgation of safety requirements in connection therewith; and said commission had enacted rules and regulations therefor, and had covered the question of interlocking devices prior to the enactment of the statute in question.

But if we are mistaken in that conclusion, we are clearly of the opinion that, as a matter of law, the statement of counsel does not show that the violation of said statute, or of any lawful requirement, was the proximate cause of the accident in question, and for such negligence as the statement does tend to show, the defendant, a charitable institution, is not responsible to a beneficiary of its charity.

"It is a well-established rule of law that the violation of a statute or ordinance, to result in liability for injury to person or property, must be a proximate cause of such injury."

**29 O. Jur., "Negligence," §40, p. 432,** and authorities cited in note.

Upon the proposition of the liability of a charitable institution to a beneficiary of the charity for violation of a safety requirement, we deem it unnecessary to decide that question in this case, because of the conclusion hereinabove announced.

However, we may here observe that the Supreme Court of this state, in the case of **Sisters of Charity v Duvelius, 123 Oh St 52,** at p. 57, has made the following statement: "This court is committed, by the three cases already cited, to the doctrine of liability to a beneficiary only for the failure to exercise due care in the selection of servants." If that be the rule, then it is extremely doubtful whether the plaintiff could successfully maintain his position as to defendant's liability, there being no claim by plaintiff that decedent's injuries were sustained by reason of a failure

on the part of the defendant to exercise due care in the selection of its servants.

As indicative of the fact that such may be the rule, see:

Old Folks' & Orphan Children's Home v Roberts, 149 NE 188, syllabus 4.

Higgons v Pratt Institute, 45 Fed. (2d) 698.

Alston v Walden Academy, 11 L.R.A. (N. S.) 1179.

Susmann v Y. M. C. A. of Seattle, 101 Wash. 487.

Hamburger v Cornell University, 240 N. Y. 328, 148 NE 539.

Vermillion v Woman's College of Due West, 88 NE 649.

Ettlinger v Trustees of Randolph-Macon College, 31 Fed. (2d) 869.

Judgment affirmed.

WASHBURN, PJ, and FUNK, J, concur in Judgment.