The STATE of Ohio, Appellee,

v.

COVRETT, Appellant.

[Cite as *State v. Covrett* (1993), 87 Ohio App.3d 534.]

Court of Appeals of Ohio,
Franklin County.

No. 92AP–1195.

Decided May 4, 1993.

*Michael Miller*, Franklin County Prosecuting Attorney, and *Katherine Press*, Assistant Prosecuting Attorney, for appellee.

*Judith M. Stevenson*, Franklin County Public Defender, and *John W. Keeling*, Assistant Public Defender, for appellant.

JOHN C. YOUNG, Judge.

Appellant, John Covrett, was indicted by the Franklin County Grand Jury for one count of aggravated robbery, in violation of R.C. 2911.01, one count of kidnapping, in violation of R.C. 2905.01, and one count of theft, in violation of R.C. 2913.02. Each count carried with it the specification that, on March 22, 1983, appellant had been convicted of aggravated robbery. Following a jury trial, appellant was convicted as charged in the indictment. Appellant was ordered to serve sentences of twelve to twenty-five years on the aggravated robbery and kidnapping charges and four to ten years on the theft offense. Thereafter, appellant filed a notice of appeal with this court, wherein he alleges the following assignments of error:

"Assignment of Error Number One

"The trial court erred when it allowed the state, over objection, to present 'rebuttal' character evidence of the defendant's sexual preferences in its case-in-chief in an attempt to 'impeach' a remark made by defense counsel during opening statements.

"Assignment of Error Number Two

"The trial court erred when it * * * allowed the state to elicit details concerning the defendant's previous 1983 conviction over the defendant's objection."

The following evidence was presented at trial. The prosecution called Michael Villalobos as its first witness. Villalobos had not been under subpoena or listed as a witness by the state in the discovery provided to appellant. Villalobos testified that he was a good friend of appellant and, over objection, the state elicited the fact that appellant was bisexual. Villalobos explained that, although he did not think appellant had ever mutually participated in any homosexual activity, appellant would engage in "passive" activity and that he would some-

times allow males to perform fellatio upon him. Villalobos also admitted that he had personally performed fellatio on appellant. Furthermore, Villalobos testified that Russell Siders had approached him and had inquired about appellant's whereabouts. Villalobos noticed that Siders was injured. After direct examination of Villalobos, the trial court continued the cross-examination until the following day to permit the defense some time to prepare. Villalobos never returned to court and appellant was forced to request a capias for his arrest. Villalobos was never arrested and appellant's counsel decided that he no longer wanted to cross-examine Villalobos anyway.

Russell Siders, the complainant and the state's key witness, was the second person to testify. Siders testified that he was a transvestite who dressed in drag and was going through a sex change. However, Siders indicated that he was "not real yet" because he had not had the final operation.

On the night in question, Siders was dressed in drag, wearing black boots, jeans, a pink tank-top with a belt around it, and a black leather jacket. Siders wore his hair long and curled and was wearing makeup, including base, eyeshadow, blush and lipstick. Siders went to Herbie's Bar with a friend named Bobby Jordan. After having a couple of drinks and shooting some pool, Siders met appellant at the bar. Siders indicated that appellant thought he was a female but that Siders told appellant that he could ask the manager, Ronnie Smith, and that Smith would tell appellant that Siders was actually a male. Siders and appellant became somewhat intimate with each other and decided to go to another bar. They had a drink at the Trade Winds Bar before they decided to return to Siders' apartment for the evening.

After they arrived at Siders' apartment, appellant asked to use the bathroom and asked for a drink. After drinking a beer, appellant asked to use the bathroom again. At this time, Siders began to undress. When appellant exited the bathroom, appellant was carrying the cord from Siders' curling iron. Appellant pushed Siders down and tied his ankles. Siders indicated that appellant wanted to tie his hands behind his back but Siders was afraid and asked appellant not to do this. At that time, appellant punched Siders below the left eye. Appellant went through Siders' purse and took money. Appellant saw that Siders had a bank card for an ATM and made Siders drive appellant to the bank. Appellant had taken a knife from the bedroom and held it to Siders' neck. The parties entered Siders' car and drove to a bank; however, there was no ATM there. The second bank had an ATM, but Siders purposefully typed in the wrong access code. Siders lied to appellant and indicated that his funds were not yet available. Appellant wanted to drop Siders off immediately; however, Siders persuaded appellant to leave him at a friend's house. Appellant did so and Siders called the police.

Certain police officers testified concerning their investigation of this case. James Rothwell, a detective with the Upper Arlington Police Department, was called to identify the appellant as the person convicted in a 1983 case of aggravated robbery in which Rothwell was the investigating detective.

Appellant testified on his own behalf that he was "straight" when he entered prison after his conviction on the 1983 aggravated robbery, but that he was bisexual when he left prison almost six years later. Appellant stated that he was not at all attracted to transvestites such as Siders because it was difficult to classify Siders as either a man or a woman. Appellant indicated that he preferred a man to be masculine and a woman to be feminine. Appellant testified that he met Siders at the bar and was under the impression that Siders was a woman. Appellant acknowledged that the two left together and went to another bar before they went to Siders' apartment. Appellant took a shower at Siders' apartment and drank a beer. When appellant exited the bathroom for the second time, he saw Siders partially undressed and realized that Siders was not a woman. At that point, appellant wanted nothing more to do with Siders and appellant asked Siders to take him back to the bar, but Siders refused. An argument ensued and appellant hit Siders in the face when Siders threatened him. Appellant took Siders' keys from his purse and left by himself in Siders' car. Appellant admitted that he removed Siders' radar detector from his car and sold it for money to buy crack cocaine. Appellant also admitted that he removed three dollars in change from the car.

On cross-examination, appellant was asked many questions regarding his 1983 conviction for aggravated robbery. Apparently, appellant and an accomplice robbed two men, one of whom appellant admitted was homosexual. Appellant's accomplice had tied the victim up and may have done so in a way similar to the way Siders accused appellant of trying to tie him. The victim of the 1983 case was a homosexual man who invited young men to work around his house and then developed relationships with them; however, appellant denied that that man had attempted to have a relationship with him.

On rebuttal, the state called Bobby Jordan, who testified that he saw appellant driving Siders' car when appellant stopped and allowed Siders to exit the car and come to Jordan's house. The state also called Ronnie Smith, the manager of Herbie's Bar. Smith acknowledged that appellant had asked him if Siders was "real" and that Smith had informed appellant that Siders was a man. Neither Jordan nor Smith had made any statements to the police.

In the first assignment of error, appellant argues that the trial court erred when it permitted the state to present character evidence concerning appellant's sexual preference during its case-in-chief in an apparent attempt to impeach a remark made by defense counsel during opening statements. On the

other hand, the state argues that the testimony of Villalobos was not offered as evidence of a pertinent trait of appellant's character, but that the testimony was offered to counter a factual assertion made by appellant's attorney.

During opening statements, defense counsel made the following statement: "My client at no time would consent to sex with another male."

Because of that statement, the state called Villalobos to the stand to testify regarding his relationship with appellant and his knowledge of appellant's sexual preference. The state argued that appellant had made his sexual preference an issue in the case and, therefore, the state had a right to present this evidence. Defense counsel objected on two grounds: (1) that Villalobos had not been named as a potential witness; and (2) that this type of evidence belongs in rebuttal after appellant has denied that he engages in sexual acts with men. The trial court permitted the state to proceed because the state carried the burden of proving the offenses beyond a reasonable doubt.

The question involved regarding this issue is: When are statements made by an attorney on behalf of their client during opening arguments attributable to the client as factual assertions? Pursuant to Ohio Jury Instructions, jurors are instructed that the opening statement made by an attorney does not constitute evidence before the jury. However, it appears that there are occasions when clients have been held accountable for the statements made by their attorneys during opening arguments. In *Oscanyan v. W.R. Arms Co.* (1881), 103 U.S. 261, 26 L.Ed. 539, the United States Supreme Court held that a trial court may direct a verdict in favor of a defendant upon the opening statement of the plaintiff's counsel. The *Oscanyan* case was an action to recover money alleged to be due plaintiff upon a contract with the defendant as commissions on the sale of firearms to the Turkish government effected through plaintiff's influence. At the time the transactions occurred, plaintiff was an official of the Ottoman government and the defendant was a corporation. After the jury was impanelled, one of plaintiff's counsel informed the court and the jury of the issues in the case and the facts which they proposed to prove. Following the opening statement of plaintiff's counsel, counsel for the defendant moved for a directed verdict because the facts which plaintiff's counsel proposed to prove showed that the contract itself was void as being corrupt and prohibited by morality and public policy and, therefore, no recovery could be had. Thereafter, the trial court inquired of plaintiff's counsel whether they claimed or admitted that the statements which had been made were true, to which plaintiff's counsel replied in the affirmative. Argument was had upon the motion and the trial court directed a verdict in favor of the defendant.

On appeal to the United States Supreme Court, the court indicated that statements made by a party's attorney as to matters to be proved are constantly

received and acted upon and such statements may dispense with proof of facts for which witnesses would otherwise be called. Accordingly, there are times when a party can be held accountable for the factual statements made by his attorney.

R.C. 2315.01 provides the general procedure to be followed in a jury trial. R.C. 2315.01 provides as follows:

"When the jury is sworn, unless for special reasons the court otherwise directs, the trial shall proceed in the following order except as provided in section 2315.02 of the Revised Code:

"(A) The plaintiff concisely must state his claim, and briefly may state his evidence to sustain it.

"(B) The defendant must then briefly state his defense, and briefly may state his evidence in support of it.

"(C) The party who would be defeated if no evidence were offered on either side, first, must produce his evidence, and the adverse party must then produce his evidence.

"(D) The parties then shall be confined to rebutting evidence, unless the court for good reasons, in the furtherance of justice, permits them to offer evidence in their original cases.

"(E) When the evidence is concluded, either party may present written instructions to the court on matters of law and request them to be given to the jury, which instructions shall be given or refused by the court before the argument to the jury is commenced.

"(F) The parties then may submit or argue the case to the jury. The party required first to produce his evidence shall have the opening and closing arguments. If several defendants, having separate defenses, appear by different counsel, the court shall arrange their relative order.

"(G) The court, after the argument is concluded, before proceeding with other business, shall charge the jury. Any charge shall be reduced to writing by the court if either party, before the argument to the jury is commenced, requests it. Such charge may be examined by the parties before any closing argument is made by any of the parties. A charge or instruction, when so written and given, shall not be orally qualified, modified, or in any manner explained to the jury by the court. All written charges and instructions shall be taken by the jurors in their retirement, returned with their verdict into court, and shall remain on file with the papers of the case."

Several of the case notes which follow R.C. 2315.01 indicate that a directed verdict may be granted in favor of a defendant upon the opening statement of

plaintiff's counsel provided that plaintiff's attorney is given an opportunity to explain or qualify the statement with reference to the evidence expected to be introduced. See *Neckel v. Fox* (1924), 110 Ohio St. 150, 143 N.E. 389; *Cornell v. Morrison* (1912), 87 Ohio St. 215, 100 N.E. 817; *Conners v. G.M. McKelvey Co.* (App.1937), 24 Ohio Law Abs. 356; *Kasper v. Oberlin College* (App.1934), 17 Ohio Law Abs. 368; and *Compton–Price Piano Co. v. Stewart* (1913), 27 Ohio C.D. 428, 25 Ohio C.C. (N.S.) 270. Therefore, although, as a general rule, juries are instructed that the opening statements of counsel do not constitute evidence, there are other occasions where one party may be granted a directed verdict in his favor based upon statements made by the other party's attorney during opening arguments.

In the present case, the state argues that the statement made by appellant's defense counsel that appellant would never have sex with a man put the issue of appellant's sexual preference at issue in the present case. Appellant's defense was that he thought Siders was a woman and that when he realized that Siders was a man, appellant was surprised and did not want anything to do with Siders. The statement made by appellant's counsel put appellant's sexual preference at issue in the trial; however, the trial court was required to provide appellant's counsel with the opportunity to explain the statement. Upon review of the record, this court notes that appellant's counsel was never provided the opportunity to explain the statement which he made during opening argument. This court believes that it was error on the part of the trial court to permit Villalobos to testify without first giving appellant's counsel an opportunity to explain or qualify the statements which he made during opening argument with reference to the evidence which he expected to introduce. On that basis, appellant's first assignment of error is well taken and is sustained.

■ In the second assignment of error, appellant argues that the trial court erred when it improperly allowed the state to elicit specific details concerning appellant's previous 1983 conviction over counsel's objections. In the present case, evidence was presented that appellant was convicted in 1983 of aggravated robbery. Over objection, the prosecutor insisted that he had the right to cross-examine appellant with respect to the specific details of his previous offense. The trial court overruled the objections and the prosecutor was allowed to elicit details of the previous offense under a similar-acts theory.

According to the state, a review of the 1983 offense and the present offense reveals the following similarities: both involved homosexual victims who were looking to develop relationships with appellant; both occurred in the victims' homes after appellant was invited in; all of the victims were tied with cords found

inside the victims' homes; and, appellant was primarily interested in stealing cash. The state indicates that the evidence presented was relevant to prove that appellant had a specific intent to commit the indicated offenses and to prove his identity as the perpetrator.

■ As a general rule, evidence of previous or subsequent criminal acts, wholly independent from the offense for which a defendant is on trial, is inadmissible in a criminal trial. See *State v. Wilkinson* (1980), 64 Ohio St.2d 308, 314, 18 O.O.3d 482, 486, 415 N.E.2d 261, 267. Exceptions to this general rule have been limited by R.C. 2945.59 and Evid.R. 404(B) to instances where the probative value of the evidence is sufficient to allow its admission.

R.C. 2945.59 provides:

"In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant."

Therefore, evidence of other acts is admissible if the evidence tends to prove a specific element of the crime charged or one of the matters specifically enumerated in the statute. Similarly, Evid.R. 404(B) provides:

"Other Crimes, Wrongs or Acts. Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

Generally, extrinsic acts may not be used to prove the inference that the accused acted in conformity with his other acts or that he has a propensity to act in such a manner. See *State v. Smith* (1990), 49 Ohio St.3d 137, 140, 551 N.E.2d 190, 193.

The task before this court is to determine the probative value of the evidence produced and whether it was admissible to prove any of the elements mentioned in R.C. 2945.59 and Evid.R. 404(B). With regard to the similarities pointed out by the prosecution, both crimes did involve homosexual victims; however, only the victim in the present case was looking to develop a relationship with

appellant, whereas appellant specifically denied during cross-examination that the victim involved in the 1983 crime was looking to develop a relationship with him. Both offenses did occur in the home of the victim; however, there is no evidence regarding the 1983 conviction that appellant was invited into the victims' home at the time the offense occurred. In both cases, the victims were tied with cords found inside the victims' homes. Last, if the testimony of Siders was believed, in both cases appellant was primarily interested in stealing cash.

The remainder of the questions asked of appellant on cross-examination by the prosecutor went beyond the scope of other acts evidence. The prosecutor asked whether appellant had lied to the detective involved in investigating the prior crime and whether appellant had threatened the victim involved in that earlier crime. These questions necessarily prejudiced appellant and improperly impeached his credibility. Furthermore, this court does not find that the specifics of the 1983 conviction consisted of other acts forming a unique, identifiable plan of criminal activity which tended to show by substantial proof any of the enumerated purposes under Evid.R. 404(B). See *State v. Jamison* (1990), 49 Ohio St.3d 182, 552 N.E.2d 180. Therefore, it was error for the trial court to allow the state to elicit this information.

Appellant's second assignment of error is well taken and is sustained.

Based on the foregoing, appellant's first and second assignments of error are sustained, the judgment of the Franklin County Court of Common Pleas is hereby reversed, and this matter is remanded for a new trial.

*Judgment reversed*
*and cause remanded.*

BOWMAN and PETREE, JJ., concur.