**The STATE of Ohio, Appellee,**

**v.**

**HESSON, Defendant–Appellant.**

[Cite as *State v. Hesson* (1996), 110 Ohio App.3d 845.]

Court of Appeals of Ohio,
Fourth District, Washington County.

No. 95CA9.

Decided May 8, 1996.

846

*Alison Cauthorn* and *Michael G. Spahr,* for appellee.

*William J. Adams,* for appellant.

KLINE, Judge.

Defendant-appellant Tammy Hesson appeals from the judgment of the Washington County Court of Common Pleas finding her guilty of felonious assault in violation of R.C. 2903.11(A)(1).[1] Appellant assigns the following errors:

"1. The trial court erred in not allowing discovery of information tying prosecution witness Joe Lightfritz to three other similar crimes and by not allowing introduction of the evidence already obtained by the defense showing Lightfritz's involvement in said other crimes.

"2. The trial court erred by not allowing the defense to introduce evidence that prosecution witnesses Joseph and Doreen Lightfritz had failed polygraph tests concerning their involvement in the Chutes beating."

On the evening of January 30, 1993, Doreen and Joseph Lightfritz accompanied appellant to several bars. The three of them eventually arrived at the Maple Cafe, where they encountered Jonni Jill Chutes. Chutes had been drinking all evening and does not recall any of the events that occurred at the Maple Cafe or during the rest of the evening. Chutes knew appellant and the Lightfritzes socially. Apparently, in 1991, appellant, Bill (appellant's present husband), Chutes, and Brian (Chutes's boyfriend) traveled to Florida together where they got into an argument over money. Allegedly, Chutes and Brian abandoned appellant and Bill in Florida after the couples argued about whether Chutes and Brian stole a quarter pound of marijuana from appellant and Bill. Joe Lightfritz also knew Chutes; the two had used drugs together.

---

1. R.C. 2903.11(A)(1) and (B) provide that any person who knowingly causes serious physical harm to another is guilty of felonious assault, an aggravated felony of the second degree. "Serious physical harm" to persons includes any physical harm that carries a substantial risk of death. R.C. 2901.01(E)(2).

The evidence indicates that appellant, Doreen and Joe Lightfritz, and Chutes left the Maple Cafe together to continue their drinking and socializing at Jackson Park in Marietta. Appellant was driving her truck, and all three of her passengers were riding with her in the front seat. There is conflicting evidence about the events that occurred upon their arrival at Jackson Park.

Doreen and Joe Lightfritz testified that appellant removed Chutes from the truck, Chutes fell or was pushed to the ground, and appellant began to punch, kick, and shake her. Appellant was yelling something at Chutes about the Florida trip, and Chutes was screaming for appellant to stop and asking why appellant was hitting her. The Lightfritzes testified that appellant stopped beating Chutes after they heard "a big crack" followed by silence. Appellant dragged Chutes to a grassy area in the park, took Chutes's coat, and then left with the Lightfritzes. The three returned once, saw that Chutes was moving, then left again. The Lightfritzes testified that appellant dropped them off at their home.

Chutes was found by a passerby in the park the next morning, very cold and badly beaten. The passerby called the police, and Chutes was taken to the hospital. Chutes suffered a fractured skull and underwent two surgical procedures to remove three subdural hematomas, or blood clots. The parties stipulated that these injuries constitute serious physical harm as defined by R.C. 2901.01(E)(2).

After Chutes regained consciousness, her mother and her daughter visited her. The mother and daughter testified that Chutes nodded when her mother asked her, in front of her daughter, whether her boyfriend Brian had assaulted her. Chutes also indicated to a friend and to a police officer that she believed Brian had assaulted her. Brian had previously been convicted of domestic violence against Chutes. Brian was eventually indicted for this assault, but the prosecutor's office dropped the charges. Chutes testified at trial that she had no memory of the evening after she, appellant, and the Lightfritzes left the Maple Cafe and that she did not know who assaulted her.

On June 8, 1994, a year and a half later, Doreen Lightfritz called the Washington County Sheriff stating that she had information about Chutes's beating. Joe Lightfritz was in prison at that time for carrying a concealed weapon, and he was granted shock probation and $197 to leave Marietta in exchange for his cooperation with the authorities in this case. Specifically, Joe and Doreen Lightfritz met with appellant once carrying a transmitter and Joe Lightfritz telephoned appellant twice from the Sheriff's office. All of these conversations were taped and the recordings were admitted at trial against appellant.

In these conversations, appellant told Joe Lightfritz that she had seen Chutes since the beating and indicated that she felt awkward approaching her. Appellant also stated that she tried to forget all about the night of the beating: "If somebody comes and says something, I'll deny it to the * * * end." Appellant and Joe Lightfritz reassured each other that neither had told anyone anything about that evening. Appellant stated that "Mom is about the only one and she's going to be an alibi, if it comes down to that." During the last phone conversation, the following was said:

"[MALE VOICE]: * * * Yeah, uh, I was talking to my sister again * * * about that Jonni Jill * * *. Well, uh, she said that the lady said, uh, that, uh, they either found blood or someone else's blood on her or some kind of jewelry or something. And I, you know, I, I was kind of thinking, you know—

"[FEMALE VOICE]: Some kind of jewelry?

"[MALE VOICE]: Yeah, or something like that. Or blood or something. They found something up there but, you know, it ain't nothing.

"[FEMALE VOICE]: Uh-hum.

"[MALE VOICE]: But it might just be talk, but, you know, I was wondering, you know, how [messed] up your hands were after, you know—

"[FEMALE VOICE]: Not at all. * * * I wasn't bleeding. * * * Just that one knuckle got bruised.

"[MALE VOICE]: Just bruised.

"[FEMALE VOICE]: Yeah, remember?

"[MALE VOICE]: No. * * * I thought the skin was wore off of them from where you was hammering her.

"[FEMALE VOICE]: Huh-ah, nope.

" * * *

"[MALE VOICE]: Did you happen to break a nail or anything?

"[FEMALE VOICE]: Huh-ah. * * * My fingernails don't get that long.

" * * *

"[MALE VOICE]: * * * I just, you know, when she said blood, I figured, you know, 'cause when you was hammering on her, I figured your hand was bleeding.

"[FEMALE VOICE]: Huh-ah. Her own. Ha, ha, ha."

When appellant was arrested on June 15, 1994, she denied causing serious injury to Chutes. She stated that they were involved in a confrontation but that she only slapped Chutes a few times and that when she last saw Chutes, Chutes was up and walking towards a pay phone. After an officer played appellant a

portion of one of the taped conversations, appellant maintained that she only slapped Chutes and never punched her with a closed fist. She added that Joe Lightfritz knocked Chutes to the ground and fiercely kicked her in the face, head, and torso. Appellant conceded that there could have been some blood.

Before trial, appellant filed a motion to compel discovery of police, prosecution, and sheriff's files concerning the unsolved murders of two women and a beating and rape of another woman in Marietta. Appellant believed that the files would connect Joe Lightfritz to these crimes, establish that the beating of Chutes was consistent with a pattern of behavior, and thereby show that Joe Lightfritz, not appellant, beat Chutes. The trial court denied appellant's motion on the grounds that appellant had failed to show sufficient similarities between the unsolved crimes and Chutes's beating. The court stated that the crimes were not sufficiently similar to be evidence of a pattern of behavior. The trial court further granted appellee's motion *in limine* prohibiting appellant from questioning witnesses about any alleged involvement of Joe Lightfritz in the rape or murders for the purpose of trying to show that Joe Lightfritz had assaulted Chutes.

Appellant also filed a motion *in limine* requesting the trial court to determine the admissibility of lie detector tests that indicated that Joe and Doreen Lightfritz were lying or withholding information about the beating. After a hearing, the trial court prohibited the admission of these tests.

At trial, appellant submitted evidence that Joe Lightfritz had pushed appellant into Chutes and that he enjoyed committing violent acts against women. Appellant also submitted evidence that Joe Lightfritz had been convicted of carrying a concealed weapon and a misdemeanor theft. Police officers and the Lightfritzes testified about the probation and money Joe Lightfritz received in return for his cooperation in this case.

A jury found appellant guilty, and the trial court sentenced her accordingly.

In appellant's first assignment of error, she argues two separate issues: first, that the trial court erred by denying appellant's motion to compel discovery of information tying Joe Lightfritz to three other crimes; and second, that the trial court erred by granting appellee's motion *in limine* prohibiting the introduction of evidence showing Joe Lightfritz's involvement in the other crimes. We will begin our analysis with the denial of appellant's motion to compel discovery.

Crim.R. 16 sets forth the procedure to be used to obtain discovery in criminal cases. Specifically, Crim.R. 16(B) provides for the disclosure of evidence by the prosecuting attorney. Pursuant to Crim.R. 16(B)(1)(f), upon motion of the defendant before trial, the court must order the prosecuting attorney to disclose all evidence favorable to the defendant and material to either guilt or punishment.

In appellant's motion to compel discovery, she requested the following information, which she believed to be favorable to her and material to her guilt:

"[A]ll police, prosecution or sheriff's files concerning the murders of Terri Roach and Rhonda Manly as well as the assault on Brenda Burgess * * * as it is believed that the prosecution is withholding evidence that the same person is involved in all these separate cases as well as the case sub judice."

Crim.R. 16(E)(3) provides that the trial court may grant an order compelling discovery if the prosecuting attorney fails to disclose evidence requested pursuant to Crim.R. 16(B). The grant or denial of discovery motions in a criminal case rests within the sound discretion of the trial court, and a reviewing court will not reverse the trial court's decision absent an abuse of that discretion. *State v. Laskey* (1970), 21 Ohio St.2d 187, 192, 50 O.O.2d 432, 434–35, 257 N.E.2d 65, 68. An abuse of discretion involves more than an error of judgment; it connotes an attitude on the part of the court that is unreasonable, unconscionable, or arbitrary. *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 16 O.O.3d 169, 172–73, 404 N.E.2d 144, 148–49; *State v. Davis* (1992), 79 Ohio App.3d 450, 454, 607 N.E.2d 543, 545–46. When applying the abuse of discretion standard, a reviewing court may not substitute its judgment for that of the trial court. *Berk v. Matthews* (1990), 53 Ohio St.3d 161, 169, 559 N.E.2d 1301, 1308–1309.

To determine whether the trial court abused its discretion by denying appellant's motion to compel discovery, we must consider whether the requested information was in fact material to appellant's guilt or punishment pursuant to Crim.R. 16(B)(1)(f). Our consideration of this question involves a *de novo* review of the law concerning materiality. Crim.R. 16(B)(1)(f) is intended to fulfill the due process requirements enunciated in *Brady v. Maryland* (1963), 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215, in which the Supreme Court held that a defendant has a due process right to the discovery of evidence that is material to the defendant's guilt or punishment. See *State v. Today's Bookstore, Inc.* (1993), 86 Ohio App.3d 810, 820–821, 621 N.E.2d 1283, 1289–91; *State v. Allen* (1990), 69 Ohio App.3d 366, 373, 590 N.E.2d 1272, 1277. See, also, *Chillicothe v. Knight* (1992), 75 Ohio App.3d 544, 549, 599 N.E.2d 871, 874–75.

In *State v. Johnston* (1988), 39 Ohio St.3d 48, 60, 529 N.E.2d 898, 911, the Supreme Court of Ohio set forth the test for whether a defendant's due process rights have been violated by the suppression of evidence:

"The suppression by the prosecution of evidence favorable to an accused violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. (*Brady v. Maryland* [1963], 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215, followed.)

"In determining whether the prosecution improperly suppressed evidence favorable to an accused, such evidence shall be deemed material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome. (*United States v. Bagley* [1985], 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481, followed.)" *Id.* at paragraphs four and five of the syllabus. See, also, *State v. Jackson* (1991), 57 Ohio St.3d 29, 33, 565 N.E.2d 549, 554–55.

Appellant's right to discovery does not entitle her to the pretrial disclosure of all information that might be useful in contradicting unfavorable testimony and does not enable her to search through all of the state's files. *Pennsylvania v. Ritchie* (1987), 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40. The state only has the duty to provide appellant with what is material. *United States v. Agurs* (1976), 427 U.S. 97, 106, 96 S.Ct. 2392, 2398–99, 49 L.Ed.2d 342, 351.

■ Appellant argues that the trial court's denial of her motion to compel discovery violated her right to due process because the discovery she requested was material to her guilt. Pursuant to *State v. Johnston, supra,* we determine materiality by considering whether there is a reasonable probability that the result of the proceeding would have been different if the evidence appellant requested had been disclosed.

Appellant claims that she needed the discovery to demonstrate similarities between Joe Lightfritz's other acts and the assault on Chutes in order to show that the other acts were admissible at trial. At the hearing on appellant's motion to compel, two witnesses testified about Joe Lightfritz's involvement in one of the murders and the rape. After reviewing one of the murder files, the trial court denied the motion based upon its determination that the other acts and the assault on Chutes were not similar, and consequently that the other acts were inadmissible.[2] The trial court did not indicate that it had reviewed the other two files appellant requested. The trial court also did not apply the test for materiality. Apparently, the trial court concluded that the requested discovery would not reveal evidence any more admissible than the evidence appellant already possessed. Although we agree with the trial court that the information appellant possessed about the other crimes was not admissible, as we discuss below, we are hesitant to deny discovery solely on this basis when appellant claims that the requested information may have enhanced her ability to show admissibility.

---

2. There are two entries in the record denying appellant's motion to compel discovery. In both of the entries, the trial court summarized the lack of similarities between the crimes and concluded that the crimes were not sufficiently similar to support admission.

Nonetheless, we do not believe that the result of the proceeding would have been different if the evidence appellant requested had been disclosed. In her attempt to admit the information she already possessed about the other acts, appellant listed eighteen suggested similarities between the assault and the other acts. Like the trial court, we are doubtful that the police, prosecution or sheriff's files would have revealed additional similarities that would have affected the trial court's decision to exclude that evidence. We concede that appellant may have gleaned information from those files that may have helped her to impeach Joe Lightfritz by way of Evid.R. 608 [3] or Evid.R. 616,[4] but such evidence would be merely cumulative to the evidence appellant presented to the jury with respect to Joe Lightfritz's motive to lie. "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." *State v. Jackson*, 57 Ohio St.3d at 33, 565 N.E.2d at 555, quoted in *Chillicothe v. Knight*, 75 Ohio App.3d at 550, 599 N.E.2d at 875–76.

■ Furthermore, evidence that the beating of Chutes was similar to other acts of Joe Lightfritz would not necessarily negate appellant's culpability. There is a possibility that the jury concluded that both Joe Lightfritz and appellant assaulted Chutes. If the disputed evidence would not relieve appellant of her culpability, the outcome of the trial would not be different. See *State v. Spirko* (1991), 59 Ohio St.3d 1, 29, 570 N.E.2d 229, 259. The discovery appellant requested was therefore not material to her guilt.

We conclude that the possibility that the undisclosed evidence would have changed the proceeding is not sufficient to undermine our confidence in the outcome of the trial. Accordingly, the trial court did not abuse its discretion by failing to compel discovery concerning Joe Lightfritz's other acts.

■ In the second part of appellant's first assignment of error, appellant challenges the grant of appellee's motion *in limine*, which prevented appellant from introducing evidence in her possession concerning Joe Lightfritz's involve-

---

**3.** Evid.R. 608(B) provides as follows:

"Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's character for truthfulness, other than conviction of crime as provided in Evid.R. 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if clearly probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness's character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified."

**4.** Evid.R. 616 provides as follows:

"Bias, prejudice, interest, or any motive to misrepresent may be shown to impeach the witness either by examination of the witness or by extrinsic evidence."

ment in other acts. The admission and exclusion of evidence rests within the sound discretion of the trial court, and its decision should not be disturbed absent a clear abuse of that discretion. *State v. Sage* (1987), 31 Ohio St.3d 173, 31 OBR 375, 510 N.E.2d 343, paragraph two of the syllabus; *State v. Hymore* (1967), 9 Ohio St.2d 122, 128, 38 O.O.2d 298, 302, 224 N.E.2d 126, 130.

■ Appellant contends that the evidence of Joe Lightfritz's other acts is admissible pursuant to Evid.R. 404(B), which provides as follows:

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

Although Evid.R. 404(B) generally forbids the use of evidence of other acts to prove that a person has a propensity to act in conformity with those acts, this rule does not prohibit the use of evidence of other acts for other enumerated purposes.[5] Evidence of other acts may therefore be admitted if it is not used to prove the forbidden inference.

To be admissible, the other act must tend to show by substantial proof one of the enumerated purposes set forth in Evid.R. 404(B). *State v. Jamison* (1990), 49 Ohio St.3d 182, 552 N.E.2d 180, syllabus; *State v. Broom* (1988), 40 Ohio St.3d 277, 533 N.E.2d 682, paragraph one of the syllabus. The Supreme Court of Ohio has stated as follows:

"Because R.C. 2945.59 and Evid.R. 404(B) codify an exception to the common law with respect to evidence of other acts of wrongdoing, they must be construed against admissibility, and the standard for determining admissibility of such evidence is strict. * * * The rule and the statute contemplate acts which may or may not be similar to the crime at issue." *Id.* See, also, *State v. Jamison*, 49 Ohio St.3d 182, 552 N.E.2d 180, syllabus.

The admissibility of other acts is limited because of the danger that the jury will assume that the person against whom the evidence is admitted possesses a propensity to commit criminal acts or deserves punishment regardless of whether he or she committed the crime charged. *State v. Schaim* (1992), 65 Ohio St.3d 51, 59, 600 N.E.2d 661, 668, citing *State v. Curry* (1975), 43 Ohio St.2d 66, 68, 72 O.O.2d 37, 38, 330 N.E.2d 720, 723. "This danger is particularly high when the

---

5. Similarly, R.C. 2945.59 permits the admission of evidence of acts of a defendant if the acts tend to show the defendant's motive or intent, the absence of mistake or accident, or a scheme, plan, or system.

other acts are very similar to the charged offense, or of an inflammatory nature * * *." *State v. Schaim*, 65 Ohio St.3d at 59, 600 N.E.2d at 668.

Appellant contends that the evidence of Joe Lightfritz's other acts was relevant to prove the identity of Chutes's attacker, a course of behavior, and consistency of motive, opportunity, intent, preparation, plan, and knowledge. The parties and this court are unable to locate any case where Evid.R. 404(B) was applied to admit evidence of other acts of a witness.[6] At the same time, we can find no authority for the proposition that Evid.R. 404(B) does not apply to witnesses.[7] We will therefore proceed with our analysis recognizing that this case is unusual in its application of Evid.R. 404(B). Furthermore, although the cases that set forth the proper application of Evid.R. 404(B) involve attempts to admit evidence of other acts of the defendant, not of a witness, we see no reason why these cases do not similarly apply to witnesses.

Appellant primarily focuses on the issue of identity, which is specifically permitted by Evid.R. 404(B). "Other acts forming a unique, identifiable plan of criminal activity are admissible to establish identity under Evid.R. 404(B)." *State v. Jamison*, 49 Ohio St.3d 182, 552 N.E.2d 180, syllabus. Although the standard for admissibility is strict, courts have not required that evidence of other acts be identical to the crime charged. *Id.* Rather, the evidence must be related to and share common features with the crime charged. *State v. Lowe* (1994), 69 Ohio St.3d 527, 634 N.E.2d 616, paragraph one of the syllabus. The common features may include a distinct, identifiable scheme, plan or system used in the commission of the charged offense and the other crimes. *State v. Smith* (1990), 49 Ohio St.3d 137, 141, 551 N.E.2d 190, 194–95; *State v. Curry*, 43 Ohio St.2d at 73, 72 O.O.2d at 41, 330 N.E.2d at 725–726. See, also, *State v. Coleman* (1988), 37 Ohio St.3d 286, 525 N.E.2d 792, paragraph three of the syllabus (requiring that the similarities between scheme, plan, or system testimony of other acts and the charged crime indicate a strong likelihood that the offender in the solved crime also committed the unsolved crime).

---

**6.** In *Columbus v. Robinson* (1986), 33 Ohio App.3d 151, 514 N.E.2d 919, the Franklin County Court of Appeals rejected the defendant's attempt to use Evid.R. 404(B) to admit evidence concerning the arresting police officer. Although the defendant asserted that the records he sought were relevant to motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, the court concluded that the essential purpose for which the defendant sought the information was to prove that the witness acted in conformity with the character evidence, which is prohibited by Evid.R. 404(B). *Id.* at 153, 514 N.E.2d at 921.

In *State v. Castleberry* (Mar. 25, 1993), Franklin App. No. 92AP–336, unreported, 1993 WL 90190, the defendant argued that evidence of other acts of a witness was admissible under Evid.R. 404(B), but the court did not address this argument.

**7.** R.C. 2945.59 does not provide for the admission of evidence of a witness's other acts.

At the hearing on appellee's motion *in limine,* appellant argued the same facts that she presented at the hearing on her motion to compel discovery. At the hearing on the motion to compel, appellant presented the testimony of Bryan Sturm, Joe Lightfritz's nephew, and Edward Murphy, Joe's friend, in order to confirm the nexuses between the assault on Chutes and Lightfritz's other acts. Bryan Sturm testified that Joe Lightfritz picked up a girl outside a bar one evening several years ago. Sturm drove Joe Lightfritz and the girl to pick up some beer and then to a boat ramp several blocks from where the Chutes beating occurred. Sturm testified that Joe had sex with the girl against her will, got out of the car, and began hitting and kicking her. Joe tried to drag the girl towards the river and eventually left her down by the boat ramp.

Sturm further testified that Joe confessed his involvement in one of the murders. Joe and a friend allegedly picked up a woman at a SuperAmerica and took her to a cemetery. Sturm testified that Joe admitted to attempting to or succeeding in having sex with the woman and then stabbing her to death with a kitchen knife. Joe allegedly told Mr. Sturm that this event gave him "a better high than shooting dope."

Edward Murphy testified that he is Joe Lightfritz's best friend. Murphy stated that Joe admitted that he raped and beat a girl at the boat ramp while he was drunk. Joe also allegedly confessed to Murphy that he had killed the woman at the cemetery. Appellant was not permitted to present to the jury the testimony of either Sturm or Murphy relating to these acts.

Appellant proffered the following nexuses between the murders, the beating and rape, and the assault of Chutes: Joe Lightfritz was in Washington County when all of the crimes occurred; all of the victims were beaten about the head and face; all of the victims were using drugs or alcohol at the time of the attack; all of the attacks took place between midnight and daybreak; all of the victims went willingly with their attacker; none of the victims drove; all of the victims were found in a secluded but public area; all of the victims were from the same social stratum and dysfunctional homes; all of the victims were unmarried and not in steady relationships; all of the victims were between five feet, three inches and five feet, five inches tall; and there was evidence of sexual activity at each crime scene.

This court concludes that the trial court did not abuse its discretion by deciding that the facts of the murders and rape are not sufficiently similar to the facts of the assault on Chutes to warrant admission. Many of the facts of the murders and rape are common to many murders and rapes and suggest no distinct pattern or scheme. For example, a situation where a perpetrator uses drugs or alcohol in an assault at night, where the victim is found in a secluded, public area, is not rare. Chutes was neither murdered or raped. Appellant suggests that a condom

found at Jackson Park near the location of the Chutes beating indicates that there was sexual activity; however, there was testimony that sexual activity is common in the park, and there was no evidence of sexual activity with Chutes.

Our decision that the other acts were not admissible is consistent with other appellate court opinions. For example, in *State v. Hall* (1989), 57 Ohio App.3d 144, 567 N.E.2d 305, the Cuyahoga County Court of Appeals held that the trial court erred by admitting evidence of other rapes. The court determined that the act of oral intercourse, robbery, use of a gun, and the conversational demeanor of the rapist were not sufficiently distinctive to demonstrate the identity of the perpetrator. The court also determined that the unfair prejudice that would result from the admission of these facts of the other crimes outweighed any marginally probative value. In *State v. Covrett* (1993), 87 Ohio App.3d 534, 622 N.E.2d 712, the Franklin County Court of Appeals held that there was no unique, identifiable plan or scheme where both crimes involved homosexual victims, occurred in the victim's home, the victims were bound with cords found in their homes, and cash was taken from both victims.[8]

This court concludes that the trial court did not abuse its discretion by forbidding the introduction of evidence in appellant's possession of Joe Light-fritz's other acts. Appellant's first assignment of error is overruled.

■ In her second assignment of error, appellant contends that the trial court erred by prohibiting the introduction of evidence that Joe and Doreen Lightfritz failed polygraph tests relating to their involvement in Chutes's beating. As discussed above, the admissibility of evidence is a matter addressed to the sound discretion of the trial court. *State v. Sage*, 31 Ohio St.3d 173, 31 OBR 375, 510 N.E.2d 343, paragraph two of the syllabus; *State v. Hymore*, 9 Ohio St.2d at 128, 38 O.O.2d at 302, 224 N.E.2d at 130. Specifically, the admissibility of polygraph test results is subject to the discretion of the trial judge. *State v. Souel* (1978), 53 Ohio St.2d 123, 7 O.O.3d 207, 372 N.E.2d 1318, syllabus.

■ Appellant concedes that *State v. Souel, supra,* is the controlling law on this subject. In *Souel,* the Supreme Court of Ohio held that the results of a polygraph test are admissible in evidence in a criminal trial for purposes of corroboration or impeachment only if both parties stipulate to their admission. *Id.* at syllabus. Appellant submits that this court should establish an exception to

---

8. Cf. *State v. Coleman* (1988), 37 Ohio St.3d 286, 525 N.E.2d 792 (sufficient similarities where deception was used to enter the homes of elderly victims who were bound by handcuffs or electric cord, and the perpetrator incapacitated the phone, stole the car, and conspired with a certain individual); *State v. Harvill* (1984), 15 Ohio App.3d 94, 96–97, 15 OBR 123, 125–26, 472 N.E.2d 743, 745–46 (similarities sufficient to establish identity were weak, older men were robbed in the evening within a three-block radius, beaten to death, and sustained inner skull and kicking or stepping injuries, and the defendants were implicated in each offense).

*Souel* for polygraph examinations given to witnesses. Appellant cites *State v. Crouse* (1987), 39 Ohio App.3d 18, 21, 528 N.E.2d 1283, 1286–87, in which the court noted that "the polygraph is a useful law enforcement tool and the members of this panel are well aware that polygraph tests are used by prosecutors and law enforcement agencies in determining whether or not to prosecute certain cases." Appellant argues that the Evidence Rules permit other questionable methods of impeachment, such as prior convictions, dying declarations, and excited utterances, and that the polygraph, which is grounded in science, is at least as reliable as these methods. Appellant reasons that it is "the duty of the prosecution to seek the truth and not convict the defendant with lies," and therefore polygraph tests should be admitted for witnesses only.

We are not persuaded by appellant's argument. The courts have permitted very few departures from the requirements of *Souel*. See, *e.g., Criss v. Springfield Twp.* (1990), 56 Ohio St.3d 82, 564 N.E.2d 440. The rationale behind this strict adherence to *Souel* is the questionable reliability and accuracy of polygraph examinations. *Criss* at 85, 564 N.E.2d at 443; *State v. Phillips* (Mar. 5, 1992), Pickaway App. No. 89–CA–32 and 89–CA–33, unreported, 1992 WL 42790. Furthermore, "[t]he subject of polygraph examinations is complex, confusing to the jury, and not relevant to the issues at trial." *State v. Jackson,* 57 Ohio St.3d at 37, 565 N.E.2d at 558. All of these factors contribute to the risk that polygraph evidence may be more prejudicial than probative. See *Brown v. Best Products, Inc.* (1985), 18 Ohio St.3d 32, 18 OBR 69, 479 N.E.2d 852; *Hawkins v. Marion Correctional Inst.* (1990), 62 Ohio App.3d 863, 577 N.E.2d 720. Although the other methods of impeachment cited by appellant may be no more reliable than a polygraph test, those methods have been accepted and established in the law as more probative than prejudicial.

The decisions of the courts of this state reflect the system's distrust of polygraph evidence. For example, the Supreme Court of Ohio has held that the state is not required to provide through discovery the results of a polygraph test performed on state witnesses because the subjective interpretations of the examiner prevent polygraph examinations from being reasonably reliable. *State v. Davis* (1991), 62 Ohio St.3d 326, 341–342, 581 N.E.2d 1362, 1375–77. In *State v. Rapp* (1990), 67 Ohio App.3d 33, 39, 585 N.E.2d 965, 969, this district found that the trial court erred by admitting polygraph results to support the credibility of a state witness.

As noted by appellee, appellant was able to cross-examine Joe and Doreen Lightfritz about their roles in the incident, their deal with the law enforcement officials, and their motivation to fabricate their testimony. This court is without authority or a compelling reason to depart from the established requirements of

*Souel.* We conclude that the trial court did not abuse its discretion by excluding the polygraph results, and we overrule appellant's second assignment of error.

Having overruled both of appellant's assignments of error, we affirm the judgment of the trial court.

*Judgment affirmed.*

PETER B. ABELE, P.J., concurs.

HARSHA, J., concurs as to Assignment of Error II but concurs in judgment only as to Assignment of Error I.