OPINION
James E. McGill, Jr. ("McGill") appeals from a judgment of the Greene County Court of Common Pleas which found him guilty of four counts of rape and four counts of gross sexual imposition. McGill committed these acts against his step-son, Ryan Murrell ("Murrell"), and step-daughter, Charity Kendrick ("Kendrick"). Murrell and Kendrick are the natural children of McGill's wife, Rose Anna McGill, and Jeff Murrell. Prior to May 18, 1997, Rose Anna McGill had had custody of the children and Jeff Murrell had had visitation with them every other weekend. On May 18, 1997, after the sexual abuse had been discovered, the children went to live with Jeff Murrell and their step-mother, Cheryl Murrell.
The record reveals as follows. On March 13, 1998, McGill was indicted on ten counts: count I-felonious sexual penetration in violation of R.C.2907.12(A)(1)(b); count II-rape in violation of R.C. 2907.02(A)(1)(b), occurring between July 1, 1996 and October 1, 1996; count III-rape in violation of R.C. 2907.02(A)(1)(b), occurring between July 1, 1996 and June 1, 1997; count IV-felonious sexual penetration in violation of R.C.2907.12(A)(1)(b); count V-rape in violation of R.C. 2907.02(A)(1)(b), occurring between July 1, 1996 and September 1, 1996; count VI-rape in violation of R.C. 2907.02(A)(1)(b), occurring between July 1, 1996 and September 1, 1996; count VII-gross sexual imposition in violation of R.C. 2907.05(A)(4), occurring between June 1, 1994 and June 30, 1996; count VIII-gross sexual imposition in violation of R.C. 2907.05(A)(4), occurring between June 1, 1994 and June 30, 1996; count IX-gross sexual imposition in violation of R.C. 2907.05(A)(4), occurring between July 1, 1996 and September 1, 1996; and count X-gross sexual imposition in violation of R.C. 2907.05(A)(4), occurring between July 1, 1996 and September 1, 1996. Counts I and IV were eventually dismissed by the state.
McGill filed various pretrial motions requesting more specific information on the alleged crimes. On April 22, 1998, the state filed a bill of particulars ("first bill of particulars") asserting that all of the alleged acts had occurred in McGill's home at 1077 East Church Street, Xenia, Ohio. The state also claimed that counts II and III involved McGill inserting his penis into the anus of a juvenile male under the age of thirteen, that counts V and VI involved McGill inserting his penis into the anus of a juvenile female under the age of thirteen, that counts VII and VIII related to McGill causing a juvenile male under the age of thirteen to touch his penis, and that counts IX and X related to McGill causing a juvenile female under the age of thirteen to touch his penis.
McGill then filed further pretrial motions requesting more specific information about the alleged crimes. On July 10, 1998, the state filed an amended bill of particulars ("second bill of particulars") claiming that counts II and III involved separate incidents, that counts V and VI involved separate incidents, and that counts IX and X involved separate incidents. The state also asserted that count III had occurred between April 1, 1997 and May 15, 1997 in the bathroom of McGill's residence while the juvenile male had been showering, that count VI had "occurred very close to the female juvenile's 7th birthday" and had taken place in her bedroom, that count VII had occurred between July 20, 1994 and August 15, 1994 and had taken place in the juvenile male's bedroom around nine o'clock in the evening on a Monday, Wednesday, or Friday, and that count VIII had occurred between July 20, 1994 and August 15, 1994 and had taken place in the juvenile male's bedroom and had involved the juvenile male stimulating McGill's penis until ejaculation.
A jury trial was held on August 10-14, 1998. The jury was unable to reach a verdict, however, so the trial court declared a mistrial.
On October 30, 1998, the state filed a motion to amend the indictment. The trial court granted the motion on November 12, 1998, and the indictment was amended to state as follows: count II occurred between July 1, 1995 and May 15, 1997, count III occurred between July 1, 1995 and May 15, 1997, count V occurred between July 1, 1995 and May 15, 1997, count VI occurred between July 1, 1995 and May 15, 1997, count VII occurred between June 1, 1994 and May 15, 1997, count VIII occurred between June 1, 1994 and May 15, 1997, count IX occurred between June 1, 1994 and May 15, 1997, and count X occurred between June 1, 1994 and May 15, 1997.
A second jury trial was held February 22-26, 1999, wherein the jury found McGill guilty on all counts. On March 3, 1999, he was sentenced to a definite period of life imprisonment for each of counts II, III, V, and VI and to a definite period of two years for each of counts VII, VIII, IX, and X. The sentences for counts II, III, VII, and VIII were ordered to be served concurrently. The sentences for counts V, VI, IX, and X were ordered to be served concurrently. The concurrent sentences for counts II, III, VII, and VIII were ordered to be served consecutively to the concurrent sentences for counts V, VI, IX, and X. The trial court also found McGill to be a sexual predator.
McGill did not rely on an alibi defense in either trial. The evidence in both trials revealed that Murrell and Kendrick had lived in the same house with McGill from October 1993 until May 18, 1997. McGill's defense was that the alleged crimes had never taken place and that the children were lying.
On March 8, 1999, McGill appealed from his conviction. He advances twelve assignments of error on appeal.
 I. IN THE FIRST TRIAL, THE TRIAL COURT ERRED IN FAILING TO DISMISS COUNTS II, VII AND VIII OF THE INDICTMENT AS LACKING PROOF OF A PROPER TIME-FRAME.
McGill argues that the trial court erred in failing to dismiss counts II, VII, and VIII at the close of the state's case in chief in the first trial because Murrell's testimony regarding the dates of the incidents of abuse was not within the dates specified in the indictment or bills of particulars. He states that had such counts been properly dismissed, he could not have been convicted of them at the second trial.
The indictment alleged that McGill had committed the following: count II-an act of rape against a juvenile between July 1, 1996 and October 1, 1996; count VII-an act of gross sexual imposition against a juvenile between June 1, 1994 and June 30, 1996; and count VIII-an act of gross sexual imposition against a juvenile male between June 1, 1994 and June 30, 1996. In its first bill of particulars, the state indicated that the victim had been a male, but the state did not amend these dates. In its second bill of particulars, the state narrowed the dates for counts VII and VIII to July 20, 1994 through August 15, 1994. Following the close of its case in chief, however, the state made a motion to amend the second bill of particulars to, inter alia, reflect the dates given in the indictment. The trial court did not rule on the state's motion at that time. Following the defendant's case in chief, the trial court heard brief oral argument from both sides regarding the state's motion. The trial court then granted the state's motion and amended the second bill of particulars, creating what we will call the "third bill of particulars." As a result, the alleged dates on the indictment and third bill of particulars for the counts pertinent to this assignment were as follows: count II-July 1, 1996 to October 1, 1996, count VII-June 1, 1994 to June 30, 1996, and count VIII-June 1, 1994 to June 30, 1996. After the trial court granted the state's motion to amend the bill of particulars, McGill made a Crim.R. 29 motion for acquittal which the trial court overruled.
Under Crim.R. 29(A), a motion for judgment of acquittal may be granted if the evidence is insufficient to sustain a conviction on the offense charged. In reviewing a trial court's denial of a Crim.R. 29 motion, we must construe the evidence in a light most favorable to the state and examine whether "the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." (Emphasis added). State v.Bridgeman (1978), 55 Ohio St.2d 261, 381 N.E.2d 184, syllabus. If the evidence, when believed, would convince the average mind beyond a reasonable doubt of the defendant's guilt, such evidence is sufficient.State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.
McGill was charged with rape of a person less than thirteen years old in violation of R.C. 2907.02(A)(1)(b) and gross sexual imposition of a person less than thirteen years old in violation of R.C. 2907.05(A)(4). Under the facts of this case, the dates of the alleged incidents were notelements of these offenses. See State v. Barnecut (1988),44 Ohio App.3d 149, 151, 542 N.E.2d 353, 355, dismissed (1988),37 Ohio St.3d 716, 532 N.E.2d 765; State v. Mundy (1994),99 Ohio App.3d 275, 296, 650 N.E.2d 502, 515, dismissed (1995),72 Ohio St.3d 1420, 648 N.E.2d 513; State v. Boehm (Dec. 31, 1997), Montgomery App. No. 16335, unreported, dismissed (1998),81 Ohio St.3d 1513, 692 N.E.2d 618. Although it is clear that the dates were not elements in this case, we will nonetheless examine the sufficiency of the evidence presented at the first trial regarding the dates of the alleged incidents.
Before discussing the evidence, however, we must first address the applicability of Barnecut, a case that is cited by McGill. In Barnecut, the defendant was indicted for, inter alia, an offense which allegedly occurred during May 1983. Barnecut, 44 Ohio App.3d at 152,542 N.E.2d at 356. The evidence presented at trial, however, showed that the offenses had occurred sometime during the spring or summer of 1981. Id.
Following its case in chief, the trial court granted a motion made by the state to amend those counts in the indictment so that the dates would reflect the testimony presented at trial. Id. at 150,542 N.E.2d at 354. The Fifth District Court of Appeals held that the trial court had erred in allowing the state to amend its indictment, stating:
 Appellant's due process rights to a fair trial were violated when the trial court allowed the indictment to be amended with regard to the first two counts after the state's case-in-chief was completed. If no evidence is presented that the alleged offenses occurred within the bracketed time frames specified in the indictment, the counts in the indictment relating to those offenses should be dismissed. Any variance of proof outside the parameters of time established by the indictment may constitute a separate offense. This analysis suggests a bright-line test, i.e., that an accused be tried for the crimes alleged in the indictment, and that any evidence outside the time period established in the indictment may constitute a separate offense requiring separate process. This bright-line approach is particularly appropriate in criminal child abuse cases. In such cases, the state is granted greater leeway in charging that the crime(s) took place within a fairly broad time frame. The quid pro quo is that the state prove what it charged.
Id. at 153, 542 N.E.2d at 356. As a result, the court entered final judgment dismissing those two counts. Id. at 153, 542 N.E.2d at 357
The Barnecut decision is not applicable to the case before us because, in Barnecut, the trial court allowed the state to amend its indictment
whereas in this case, the trial court allowed the state to amend the dates in its second bill of particulars. See State v. Gingell (1982),7 Ohio App.3d 364, 367, 455 N.E.2d 1066, 1070-1071 (discussing the purpose of a bill of particulars and its relationship to an indictment). Further, the bright-line test established in Barnecut has not been consistently followed by other courts in this state. See, e.g., Statev. Daniel (1994), 97 Ohio App.3d 548, 557, 647 N.E.2d 174, 180 (Tenth District Court of Appeals stated "if a variance occurs between the dates alleged in the indictment or bill of particulars and the evidence adduced at trial, the state or the trial court may amend the indictment to conform to the evidence offered in the state's case-in-chief"); State v.Murrell (1991), 72 Ohio App.3d 668, 671-672, 595 N.E.2d 982, 984, dismissed (1991), 61 Ohio St.3d 1419, 574 N.E.2d 1090 (Twelfth District Court of Appeals distinguished the facts in its case from those inBarnecut and held that the trial court had not erred in allowing the state, at the close of its case, to amend the dates of the alleged acts in the indictment). Thus, we will not conclude that the trial court erred in allowing the state to amend the dates in its second bill of particulars to conform to the dates listed in the indictment.
Also, before examining the evidence, we must discuss the unique nature of alleged dates in child sexual abuse cases. "In many cases involving child sexual abuse, the victims are children of tender years who are simply unable to remember exact dates and times, particularly where the crimes involve a repeated course of conduct over an extended period of time." Mundy, 99 Ohio App.3d at 296, 650 N.E.2d at 515; see State v.Robinette (Feb. 27, 1987), Morrow App. No. CA-652, unreported; Barnecut,44 Ohio App.3d at 151-152, 543 N.E.2d at 355. "The problem is compounded where the accused and the victim are related or reside in the same household, situations which often facilitate an extended period of abuse." Robinette, supra. Thus, "[a]n allowance for reasonableness and inexactitude must be made for such cases considering the circumstances."Id. See State v. D.B.S. (1985), 216 Mont. 234, 700 P.2d 630, cited byBarnecut, 44 Ohio App.3d at 152, 543 N.E.2d at 355 (stating "young children are not `governed by the clock and calendar as adults are' and allowances must be made for the inexactitude of children's memories, or else the defendant becomes virtually immune from prosecution"). In this case, Murrell and Kendrick resided with McGill during the incidents of abuse, they were less than thirteen years of age, and the abuse occurred over a period of more than two years. Therefore, we must make an allowance for the inexactitude of their memories in attempting to recall the specific dates of the numerous incidents of abuse.
We will now discuss the sufficiency of the evidence presented at the first trial regarding the dates alleged for the incidents of abuse against Murrell. As we stated, supra, the dates on the indictment and third bill of particulars for the counts pertinent to this assignment were as follows: count II-July 1, 1996 to October 1, 1996, count VII-June 1, 1994 to June 30, 1996, and count VIII-June 1, 1994 to June 30, 1996.
At the first trial, Murrell testified that the sexual abuse had started around the end of his third grade year in school and had continued through April 1997. Murrell testified that McGill had inserted his penis into Murrell's anus about four times, with the first time occurring while Murrell was "[a]bout" in fourth grade and the last time occurring after Christmas and before May 18, 1997. Copies of Murrell's report cards were admitted as an exhibit at the first trial. They reveal that Murrell was in third grade from 1994 through 1995, in fourth grade from 1995 through 1996, and in fifth grade from 1996 through 1997.
Thus, the evidence reveals that McGill first inserted his penis into Murrell's anus sometime during September 1995 through May 1996. Further, the last time McGill inserted his penis into Murrell's anus was between December 26, 1996 and May, 18, 1997. Murrell testified that McGill had inserted his penis into Murrell's anus about four times. Thus, at least three incidents happened some time during September 1995 through December 26, 1996, with the last incident occurring after December 26, 1996. The time frame alleged by the state for count II-rape was July 1, 1996 to October 1, 1996. Although Murrell did not testify regarding any specific incident that occurred between July 1, 1996 and October 1, 1996, his testimony allows the conclusion that one or two of the incidents could have occurred between July 1, 1996 and October 1, 1996. Construing the evidence in a light most favorable to the state, as required when reviewing the trial court's denial of a Crim.R. 29 motion, and with the unique nature of child sexual abuse cases in mind, we conclude that such evidence, if believed, was sufficient for a reasonable mind to conclude beyond a reasonable doubt that McGill had committed the act within the dates alleged in count II. See Robinette, supra
(concluding that error did not necessarily result when the indictment alleged a sexual battery had taken place on February 18, 1984, the defendant testified that he had been out of town on that date, and the victim could only testify that the incident had happened "sometime `around February'" because "the evidence introduced at trial was consistent with establishing that the offense [had] occurred on the [alleged date] or within a reasonable time of [that date]").
Murrell's testimony at the first trial also reveals that he touched McGill's penis about once a month from at least September 1995 through April 1997. The state alleged in counts VII and VIII-gross sexual imposition that the touching had occurred between June 1, 1994 to June 30, 1996. Thus, there was evidence sufficient for a reasonable mind to conclude beyond a reasonable doubt that McGill had committed the acts within the dates alleged in counts VII and VIII.
The first assignment of error is overruled.
 II. IN THE FIRST TRIAL, THE TRIAL COURT ERRED IN FAILING TO REQUIRE AN ELECTION BY THE STATE BETWEEN COUNTS V AND VI AND BETWEEN COUNTS IX AND X AND BY FAILING TO DISMISS THE COUNTS NOT SELECTED FOR LACKING PROOF OF A PROPER TIME-FRAME.
McGill argues that the trial court erred in failing to dismiss either count V or VI and either count IX or X because the testimony presented in the first trial by Kendrick did not support convictions on all four of these counts. McGill concedes, however, that the dates given by Kendrick in her testimony did support a conviction under one count of rape, either count V or VI, and under one count of gross sexual imposition, either count IX or X.
The dates alleged in the indictment and third bill of particulars for each of counts V, VI, IX, and X were July 1, 1996 to September 1, 1996.
At the first trial, Kendrick testified that although she did not know how many times McGill had abused her, she thought the abuse had started when she had been in kindergarten. Using pictures of an anatomically-correct female child and an adult male, Kendrick indicated that McGill had placed his penis into both her vagina and anus by circling those areas on the pictures. She specifically stated that he had done this to her during the summer after her first grade year in school and during the first half of her second grade year in school. She also testified that McGill had forced her to touch his penis while she had been in the first grade, during the summer after her first grade year, and during the first half of her second grade year. Kendrick's grade cards were admitted at trial as an exhibit and they reveal that Kendrick was in kindergarten from 1994 through 1995, in first grade from 1995 through 1996, and in second grade from 1996 through 1997.
Thus, according to Kendrick's testimony, McGill inserted his penis into her vagina and anus between May 1996 and December 1996 and he forced her to touch his penis between September 1995 and December 1996. Although she did not testify exactly how many times these incidents had occurred, she stated that McGill had placed his penis in her vagina and anus more than once and that he had forced her to touch his penis more than once. Construing the evidence in a light most favorable to the state and with the unique nature of child sexual abuse cases in mind, we conclude that such evidence, if believed, was sufficient for a reasonable mind to conclude beyond a reasonable doubt that McGill had committed the acts within the dates alleged in counts V, VI, IX, and X. The trial court did not err in failing to dismiss either count V or VI and either count IX or X.
The second assignment of error is overruled.
 III. THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE IN THE FIRST TRIAL WARRANTED A DIRECTED VERDICT OF ACQUITTAL ON THE RAPE COUNTS.
McGill argues "that both the weight and sufficiency of the evidence at the conclusion of the first trial * * * were incapable of supporting a conviction at least on the four (4) counts of rape and, in fact, warranted a directed verdict of acquittal." McGill asserts that had he been granted a directed verdict of acquittal on those four counts at the first trial, those counts would not have been part of the second trial and he could not have been convicted of them.
"The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different." State v.Thompkins (1997), 78 Ohio St.3d 380, 678 N.E.2d 541, paragraph two of the syllabus. To determine whether a conviction is against the manifest weight of the evidence:
 The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.
Id. at 387, 678 N.E.2d at 547, quoting State v. Martin (1983),20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720-721.
As we discussed, supra, to determine whether the evidence before a trial court was sufficient to sustain a conviction, we must examine the evidence to evaluate whether such evidence, if believed, would convince the average mind beyond a reasonable doubt of the defendant's guilt.Jenks, supra, at paragraph two of the syllabus. While making this examination, we must view the evidence in a light most favorable to the prosecution and determine whether any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Id. "`Because sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency.'" (Emphasissic.) State v. Pryce (June 28, 2000), Summit App. No. 19888, unreported, quoting State v. Roberts (Sept. 17, 1997), Lorain App. No. 96CA006462, unreported.
McGill's argument regarding the weight of the evidence is inapplicable to this assignment. When reviewing the weight of the evidence, we must determine whether a defendant's conviction should be reversed. McGill, however, was not convicted as a result of the first trial because it resulted in a mistrial. Thus, we will only review the sufficiency of the evidence presented in the first trial.
McGill was charged with rape in violation of R.C. 2907.02(A)(1)(b), which provides that "[n]o person shall engage in sexual conduct with another who is not the spouse of the offender" when the "person is less than thirteen years of age[.]" "Sexual conduct" is defined to include vaginal intercourse, anal intercourse, and the insertion, however slight, of any part of the body into the vaginal or anal cavity of another. R.C. 2907.01(A). McGill was also charged with gross sexual imposition in violation of R.C. 2907.05(A)(4), which provides that no person shall have sexual contact with another who is not the spouse of the offender or cause another who is not the spouse of the offender to have sexual contact with the offender when the victim is less than thirteen years of age. "Sexual contact" is defined as "any touching of an erogenous zone of another, including * * * genitals * * * for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B).
In support of his argument in this assignment, McGill points to inconsistencies in the children's testimonies, the testimonies of other witnesses regarding the possibility that the children were lying, the testimony of a pediatrician who stated that he had found no physical evidence that the children had been sexually abused, the testimony of the children's step-mother who stated that she had not seen any signs of trauma to the children, and the children's own testimonies which McGill describes as "incredible." These testimonies and bits of evidence, however, do not present a full picture of the evidence presented at trial.The inconsistencies in the children's reports of the incidents were not inconsistencies that occurred during their testimonies at the trial but instead were inconsistencies between their testimonies at trial and their statements to police at the time the incidents were originally reported. Dr. Hicks, a pediatrician, testified that although there was no physical evidence that the children had been sexually abused, a lack of evidence was "very common" because sexual abuse was usually "nonviolent and nonassaultive" and his exam had occurred nine months after the children had been removed from McGill's home, during which time any injuries could have healed. The children's step-mother, Cheryl Murrell, testified that although she had not seen any signs of trauma to the children's genitals during the children's visits with their natural father, while bathing Kendrick, she had noticed that Kendrick's vagina had been "red and raw * * * every weekend" but had attributed the condition to infections from poor personal hygiene. She also stated that she had not looked at Kendrick's anus while bathing her. She testified that she did not bathe Murrell. She said that the children had been bruised "every weekend," and that they were always upset when they had to return to their mother's care in McGill's home.
Further, regarding the children's testimony being "incredible," McGill argues that Murrell must have been lying when he testified that, on occasion, he had been anally raped in the shower while both he and McGill were standing erect, because the height difference between McGill and Murrell would have made it physically impossible for that to have happened. Although we agree that such testimony is suspect, the state did not indicate that either of the alleged counts of rape represented the rapes in the shower. Murrell testified that McGill had raped him about four times, that most of the incidents of abuse had taken place in Murrell's bed, and that the incidents had only "sometimes" taken place in the shower.
With McGill's denial that the alleged incidents occurred, this case essentially became his testimony against the children's testimonies. The children testified that they had been sexually assaulted by McGill while McGill stated that he had not sexually assaulted them. After carefully reviewing the entire record, and construing the evidence in favor of the state, we find that there was sufficient evidence from which a reasonable mind could have concluded beyond a reasonable doubt that McGill was guilty of the alleged acts.
The third assignment of error is overruled.
 IV. IN THE FIRST TRIAL, THE TRIAL COURT ERRED IN FAILING TO DISMISS ONE COUNT OF RAPE FOLLOWING THE CHANGED TESTIMONY OF A COMPLAINANT.
As we discussed, supra, counts V and VI of the indictment charged McGill with two rapes of a female juvenile between July 1, 1996 and September 1, 1996. The indictment did not specify whether the rapes had been anal or vaginal penetration. In the first bill of particulars and the second bill of particulars, counts V and VI stated that McGill had inserted his penis into a female juvenile's anus. At trial, Kendrick used an ink pen to circle the vagina and anus on anatomically correct pictures of the front and back of a female child when asked where McGill had put his penis. At the close of McGill's case in chief, the trial court granted the state's motion to amend the second bill of particulars to allege in count VI that McGill had raped the female juvenile by vaginal penetration. McGill now argues that the trial court erred in allowing this amendment.
In this assignment, McGill emphasizes the importance of an indictment and its purposes of enabling an accused to prepare a defense against the charges and protecting him from future prosecution for the same offense. The indictment in this case, however, was not amended until after the first trial had resulted in a mistrial. Only the first and second bills of particulars were amended before and during the first trial.
McGill further argues that the amendment "change[d] the nature or identity of the crime" charged.
R.C. 2941.30 and Crim.R. 7(D) state, in part:
 The court may at any time * * * during, or after a trial amend the * * * bill of particulars, in respect to any defect, imperfection, or omission in form or substance, or of any variance with the evidence, provided no change is made in the name or identity of the crime charged.
Crim.R. 7(E) further states, in part:
 A bill of particulars may be amended at any time subject to such conditions as justice requires.
Thus, where the amendment does not affect the elements of the offense charged or the name or identity of the offense, the defendant will not be prejudiced. See State v. Ensman (1991), 77 Ohio App.3d 701, 704,603 N.E.2d 303, 304-305, dismissed (1992), 63 Ohio St.3d 1409,585 N.E.2d 834.
In counts V and VI, McGill was charged with rape in violation of 2907.02(A)(1)(b). As we stated, supra, R.C. 2907.02(A)(1)(b) provides that "[n]o person shall engage in sexual conduct with another who is not the spouse of the offender" when the "person is less than thirteen years of age[.]" "Sexual conduct" is defined to include vaginal intercourse, anal intercourse, and the insertion, however slight, of any part of the body into the vaginal or anal cavity of another. R.C. 2907.01(A). Thus, the trial court's amendment of the second bill of particulars to allege vaginal penetration instead of anal penetration in count VI did not affect the elements, name, or identity of the offense because regardless of whether the incident involved the vaginal or anal cavity, it was sexual conduct which constituted rape.
McGill argues that he was prejudiced by the amendment because before the amendment, counts V and VI had seemed so similar that he had been unable to distinguish between them, and thus he had been prevented from attempting to determine the applicability of an alibi defense. McGill never presented notice of an alibi, however, and his defense at trial was that the incidents never occurred. Further, the amendment did not change any part of the second bill of particulars that would have affected the preparation of an alibi defense, such as the dates, times, or locations of the alleged rapes.
McGill also argues that he was prejudiced because the amendment to a vaginal rape instead of an anal rape "present[ed] possible evidentiary elements which could have been the subject of greater and better focus[.]" In his argument, McGill fails to explain exactly what evidentiary elements could have been the subject of better focus. McGill was afforded the opportunity to cross and recross examine Kendrick after she testified that McGill had raped her vaginally. Further, although the testimony of Dr. Hicks was given before Kendrick's testimony, he testified that he had given both genital and anal exams to Kendrick and that his findings from such exams had been normal or unremarkable. Also, Kendrick's testimony was given during the state's case in chief, so McGill had an opportunity to attempt to rebut that testimony during his case in chief.
McGill argues that "where the issue of credibility is the resolution to the case due to a lack of other corroborating evidence, the sudden, unexpected and last-minute change should give great concerns regarding that issue." As we stated supra, McGill was afforded the opportunity to cross and recross examine Kendrick after she testified that the rapes had been both anal and vaginal. Thus, McGill could have questioned her specifically about her "last-minute change" in testimony.
The fourth assignment of error is overruled.
 V. THE TRIAL COURT ERRED BY PROHIBITING APPELLANT FROM ADDUCING CRITICAL TESTIMONY CONCERNING THE CREDIBILITY OF A COMPLAINANT.
McGill argues that the trial court erred in the second trial by not allowing him to present the testimony of one of the jurors from the first trial who would have testified that she had observed a family member "coaching" Kendrick during her testimony at the first trial.
On the day the second trial began, the trial court asked the parties whether there were any motions that needed to be decided prior to the beginning of the trial. At that time, the state made a motion in limine
to exclude the former juror's testimony from the trial. The trial court heard arguments from both sides and McGill's attorney proferred what the former juror would testify. The trial court eventually granted the state's motion to exclude the former juror's testimony.
When granted, a motion in limine "is a tentative, interlocutory, precautionary ruling by the trial court reflecting its anticipatory treatment of [an] evidentiary issue." State v. Grubb (1986),28 Ohio St.3d 199, 201-202, 503 N.E.2d 142, 145. "The effect of the granting of a motion in limine in favor of the state * * * is to temporarily prohibit the defendant from making reference to evidence which is the subject of the motion." Id. at paragraph one of syllabus. "At trial it is incumbent upon a defendant, who has been temporarily restricted from introducing evidence by virtue of a motion in limine, to seek the introduction of the evidence by proffer or otherwise in order to enable the court to make a final determination as to its admissibility and to preserve any objection on the record for purposes of appeal." Id.
at paragraph two of the syllabus. An appellate court does not need to review the propriety of the trial court's granting of a motion in limine
unless the claimed error was preserved by the defendant with a timely objection when the issue was actually reached during trial. Id. at 203,503 N.E.2d at 146 (quotation omitted).
During the second trial, McGill did not seek the introduction of the former juror's testimony by proffer or otherwise. The record clearly reveals that the state's motion in limine was an issue that was considered prior to the start of the trial, although the trial began shortly after the state's motion was decided. Thus, although McGill's attorney proffered the former juror's testimony before the trial court ruled on the motion in limine, such proffer was not adequate to fulfill McGill's responsibility to raise the issue again at trial when it was actually reached during the presentation of his case in chief. Thus, because McGill failed to raise this issue and proffer this testimony, he waived his right to object to it on appeal. See id. at 203,503 N.E.2d at 147; Evid.R. 103.
Further, the children's testimonies at the second trial were presented via videotape deposition. When addressing the state's motion in limine, McGill's attorney admitted that he had known about the former juror's allegations that Kendrick had been coached during the first trial at the time the videotape deposition of Kendrick had been taken for the second trial. The attorney conceded that he had had an opportunity to cross examine Kendrick, if he had wished, about the alleged coaching during that deposition.
While discussing the state's motion in limine, McGill's attorney also admitted that there was no indication of any coaching during Kendrick's testimony in the videotape deposition that was played for the jury in the second trial. The state argues that any coaching that might have taken place during the first trial would have been irrelevant during the second trial because both sides agreed that there had been no coaching during Kendrick's videotape deposition. McGill argues that any coaching that might have taken place during the first trial was relevant to the second trial because any previous coaching would "be relevant to the issue of whether or not the children were truthful." We find the state's argument to be persuasive. Both parties agree that there was no coaching during the videotape deposition which was played to the jury in the second trial. Had McGill wished to inquire about the possibility that Kendrick had ever been coached by a family member on the issue of whether she was being truthful, he could have directly done so during cross examination and recross examination of Kendrick.
The fifth assignment of error is overruled.
 VI. THE TRIAL OURT [sic] ERRED IN PERMITTING THE STATE TO ADDUCE, OVER OBJECTION, EVIDENCE THAT A COMPLAINANT WAS BEING TRUTHFUL.
During the second trial, the state presented the testimony of Xenia Police Officer Christine Keith, who had been dispatched on May 17, 1997 to the residence of the children's natural father and step-mother on a report of possible child abuse. She testified that upon arrival at the residence, she had seen a large bruise on Kendrick's left buttock. Other evidence at trial indicated that Kendrick had received the bruise from a wooden paddle "whipping" given to her by McGill. McGill was charged with child endangering as a result and he pled guilty to that charge before the first trial.
Keith testified that Kendrick had been "very frightened" and originally had not wanted to talk to her, although Kendrick had eventually revealed how she had gotten the bruise. During redirect, the state asked Keith, "Despite the fact [that Kendrick] was reluctant to talk to you, is there any doubt in your mind [that] she was the victim of abuse?" McGill's attorney objected and the trial court overruled the objection. After being reasked a similar question, Keith responded, "I have no doubt." During a later redirect, the state asked Keith, "What [Kendrick] told you though proved to be correct, right?" Keith responded, "Yes." After Keith's response, McGill's attorney moved to strike her answer but the trial court overruled his motion.
McGill argues that the trial court erred when it allowed Keith to offer this "direct commentary * * * on the credibility of [Kendrick]" because such testimony bolstered Kendrick's credibility.
"An expert may not testify as to the expert's opinion of the veracity of the statements of a child declarant." State v. Boston (1989),46 Ohio St.3d 108, 545 N.E.2d 1220, syllabus. In Boston, a jury found a father guilty of gross sexual imposition against his two year old daughter. Id. at 108, 111, 545 N.E.2d at 1222, 1225. During his trial, the court allowed a pediatrician who had examined the child to testify that the child had neither fantasized her abuse nor been programmed to make the accusations of abuse. Id. at 109, 128, 545 N.E.2d at 1223,1240. The court also allowed a counselor who had examined the child to testify that the child had been telling the truth. Id. at 109, 129,545 N.E.2d at 1223, 1240. The supreme court concluded that the admission of these testimonies was improper, egregious, prejudicial, and constituted reversible error. Id. at 128, 545 N.E.2d at 1240. The court explained that the admission of testimony which, in effect, declared that the child's statements had been truthful "acted as a litmus test of the key issue in the case and infringed upon the role of the fact finder, who is charged with making determinations of veracity and credibility." Id. at 128-129, 545 N.E.2d at 1240. (quotation omitted). The court emphasized that "[i]n our system of justice it is the fact finder, not the so-called expert or lay witnesses, who bears the burden of assessing the credibility and veracity of witnesses." Id. at 129, 545 N.E.2d at 1240. (quotation omitted).
The supreme court further explained its holding in Boston in State v.Stowers (1998), 81 Ohio St.3d 260, 690 N.E.2d 881. In Stowers, a jury found a father guilty of four counts of rape against his children.Stowers, 81 Ohio St.3d at 260, 690 N.E.2d at 882. At his trial, the court allowed a clinical psychologist to testify that the behavior of the children, who had changed their stories between their initial questioning and the time of trial, had been consistent with the behavior of children who had been sexually abused. Id. On appeal, the father argued that the clinical psychologist's testimony had "served to bolster the children's credibility in violation of the Boston holding." Id. at 262,690 N.E.2d at 883-884. In holding that the clinical psychologist's testimony had not been in violation of Boston, the supreme court noted a distinction between "expert testimony that a child is telling the truth and evidence which bolsters a child's credibility insofar as it supports the prosecution's efforts to prove that a child has been abused." (Emphasissic.) Id. at 262-263, 690 N.E.2d at 884. The court stated:
 Boston's syllabus excludes expert testimony offering an opinion as to the truth of a child's statements (e.g., the child does or does not appear to be fantasizing or to have been programmed, or is or is not truthful in accusing a particular person). It does not proscribe testimony which is additional support for the truth of the facts testified to by the child, or which assists the fact finder in assessing the child's veracity.
Id. at 262-263, 690 N.E.2d at 884. The court concluded that the clinical psychologist's testimony stating that even though the children had changed their stories, her assessment that they had been abused had not changed was "permitted to counterbalance the trier of fact's natural tendency to assess recantation and delayed disclosure as weighing against the believability and truthfulness of the witness." Id. at 263,690 N.E.2d at 884. The court further stated that "[t]his testimony does not usurp the role of the jury, but rather gives information to a jury which helps it make an educated determination." Id. (quotation omitted).
Before discussing the merits of McGill's argument, we must discuss the context of Keith's testimony. Keith was dispatched to the children's father's home on a report of possible child abuse because Kendrick was bruised. No allegations or discussion of sexual abuse took place. Keith's testimony clearly related to whether or not Kendrick had been the victim of physical abuse. Thus, in her testimony, she meant that she had no doubt that Kendrick's bruise had been the result of physical abuse.
Turning to the merits of McGill's argument, we believe that Keith's testimony, although related only to physical abuse and not to sexual abuse, presents a close question as to whether it qualified as bolstering in violation of Boston. In essence, her testimony stated that she had no doubt Kendrick was telling the truth when she informed Keith that McGill had "whipped" her with a wooden paddle. The evidence at trial clearly revealed, however, that McGill had pled guilty to a charge of child endangering as a result of Kendrick's bruise. McGill's attorney even asked Keith questions about McGill's guilty plea to the child endangering charge. Further, on direct examination, McGill testified that he had "whipped" Kendrick with a wooden paddle on that occasion between eleven and twelve times, that his wife had informed him that it had left a "bad" bruise on Kendrick, and that he had pled guilty to the charge of child endangering. Because there was ample evidence, aside from Keith's testimony that she had no doubt that Kendrick had been abused, any possibility that her testimony did qualify as bolstering Kendrick's testimony that McGill had whipped her with a wooden paddle in violation of Boston and Stowers was harmless.
The sixth assignment of error is overruled.
 VII. THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY ALLOWING THE STATE TO INTRODUCE, OVER OBJECTION, EVIDENCE OF OTHER BAD ACTS.
McGill argues that the trial court erred in allowing the state to produce evidence that he had previously been convicted of child endangering and that his wife, Rose Anna McGill, had allegedly physically abused the children because such evidence qualified as other bad acts evidence which should have been inadmissible under Evid.R. 404(B). He also argues that the probative value of this evidence was outweighed by its prejudicial nature and thus it should not have been admitted pursuant to Evid.R. 403(A).
Prior to the first trial, McGill filed a pretrial motion asking the court to limit evidence of his prior bad acts at trial. The trial court overruled his motion, finding that McGill's prior crime of child endangering was "like and similar" to the alleged sexual abuse crimes because they involved the use of force or threatened use of force. The court reasoned that since force was an element at issue in the sexual abuse allegations and force had been used in the incident that had led to the prior child endangering conviction, his prior conviction tended to prove McGill's identity in the alleged sexual abuse crimes through the same modus operandi, common scheme, or plan in the commission of the alleged offenses. "`The admission or exclusion of relevant evidence rests within the sound discretion of the trial court.'" State v. Bey (1999),85 Ohio St.3d 487, 490, 709 N.E.2d 484, 490, certiorari denied (1999), — U.S. ___, 120 S.Ct. 587, quoting State v. Sage (1987),31 Ohio St.3d 173, 510 N.E.2d 343, paragraph two of the syllabus. Thus, we must determine whether the trial court abused its discretion in admitting the other acts evidence. See Bey, 85 Ohio St.3d at 490,709 N.E.2d at 490. "The term `abuse of discretion' connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." In re Jane Doe 1 (1991),57 Ohio St.3d 135, 137, 566 N.E.2d 1181, 1184 (quotation omitted).
Evidence is relevant and can be admissible if it has any tendency to make the existence of any fact that is of consequence to the determination of a case more probable or less probable than it would be without such evidence. Evid.R. 401, 402. Evid.R. 404(B) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove" a defendant's criminal propensity. Such evidence is admissible under Evid.R. 404(B), however, "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." See Bey, 85 Ohio St.3d at 490-491,709 N.E.2d at 490, citing State v. Lowe (1994), 69 Ohio St.3d 527, 530, 634 N.E.2d 616,619. R.C. 2945.59 similarly states:
 In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant.
"Because Evid.R. 404(B) and R.C. 2945.59 are in derogation of the common law in respect to evidence of other acts of wrongdoing, they are construed against admissibility and the standard for determining admissibility of such evidence is strict." State v. Henderson (1991),76 Ohio App.3d 290, 293, 601 N.E.2d 596, 598, citing State v. Burson
(1974), 38 Ohio St.2d 157, 158-159, 311 N.E.2d 526, 528-529.
McGill first argues that the trial court erred in admitting evidence of his prior conviction for child endangering because such evidence was forbidden under Evid.R. 404(B).
We do agree with the trial court's finding that the "whipping" incident which led to McGill's conviction and the alleged incidents of sexual abuse were similar in that they both involved the use or force or threatened use of force. Although the trial court stated that the child endangering conviction could "be used to identify [McGill] as the perpetrator," we do not believe that the trial court intended to imply that his conviction would be admissible under the identity exception listed in Evid.R. 404(B). Identity was not, after all, an issue in the case because the case was ultimately an issue of credibility between the children's allegations that McGill had sexually abused them and McGill's denial of such allegations.
Instead of identity, we believe that the trial court meant that his child endangering conviction was admissible under Evid.R. 404(B) as proof of McGill's scheme or plan in committing the sexual abuse. Although the trial court used the word "identity" in its entry, the court emphasized that since force was an element in the incident which led to his child endangering conviction and the sexual abuse allegations against him, McGill's child endangering conviction tended to show that McGill had used "the same modus operandi or common scheme or plan in the commission of the alleged offense[s]." Under Evid.R. 404(B) and R.C. 2945.59, evidence of a defendant's past crimes is admissible to prove his opportunity, plan, scheme, or system in doing an act. As the trial court stated, the child endangering incident was similar to the alleged incidents of sexual abuse because such incidents involved the use of force and threatened use of force. His prior conviction was proof that he had used force against the children before and it was admissible as proof of the scheme or system, i.e. placing fear into the children so that they would cooperate and not report the abuse, which McGill had used to accomplish the alleged crimes against the children.
Murrell testified that McGill had whipped him weekly at first with a belt and later with a wooden board. He stated that he had been whipped for failing to read, pray, and listen, for going in the woods where it was muddy, and for "talking back." He testified that during the whippings, he was usually struck between ten and twenty times on his buttocks and thighs and that the whippings would leave welts and bruises every time. The bruises apparently were not discovered by anyone because McGill's religious beliefs required that the children's bodies always be covered with clothes, such as pants and long skirts. Murrell stated that he would cry and ask McGill to stop whipping him, but that McGill would not respond. He testified that the first time McGill had sexually abused him, McGill had told him that if he told anyone about the abuse, McGill would "beat" him. Murrell also testified that McGill had threatened Murrell with the board and had brought the board into Murrell's bedroom during some of the incidents of sexual abuse. Murrell stated that he had never protested to McGill's sexual abuse because he was scared that McGill would "beat" him. Murrell also stated that he had not revealed that McGill had abused him even after he had moved out of McGill's house and into his natural father's house because he was "still scared" of McGill and because even though he was no longer around McGill, McGill "could've done anything" to him.
Kendrick testified that McGill had whipped her with the wooden board more than five times. Kendrick testified that it had hurt when McGill had hit her with the board and that it had "made [her] afraid of him." She stated that the first time McGill had sexually abused her, he had told her not to tell anyone about the abuse. She said that although she had cried during the incidents of sexual abuse, she had not yelled out because he had told her not to tell anyone and he had taped her mouth shut during the incidents of abuse. She also stated that after she had moved away from McGill and in with her natural father, she was "still scared" of McGill and thus had never told anyone about the sexual abuse until she had been specifically questioned about it. Thus, as the children's testimonies reveal that force and fear was very much a part of the scheme or system McGill used to sexually abuse them, the trial court did not abuse its discretion in concluding that evidence of McGill's prior conviction for child endangering, a crime which similarly involved the use of force and fear against the children, was admissible under Evid.R. 404(B).
The evidence of his prior conviction of child endangering was also admissible pursuant to Evid.R. 404(B) as proof that McGill had had the opportunity to sexually abuse the children. McGill's attorneys attempted to establish doubt in the jurors' minds by questioning how the alleged abuse could have happened without anyone else having knowledge that it was going on. The children testified that the sexual abuse had occurred during the night while they had been in their own beds and while Rose Anna had been present in the home. The evidence revealed that the home was small and that at least Murrell's bedroom did not have a door on it that could be closed. Rose Anna testified that she is "a light sleeper" and would "[u]sually" wake up when McGill would get out of bed during the night, and that whenever she had woken up at night, McGill had been in bed with her. She also testified that raccoons getting in the trash would wake her up and that she would wake up when her children were sick. Thus, evidence of his prior conviction of child endangering, a crime which involved the use of force against the children, was admissible under Evid.R. 404(B) and R.C. 2945.59 as evidence of the force he had used and of the fear that the children might have had of him and to explain why both children stated that they had never cried out during the sexual abuse, giving McGill the opportunity to carry out the incidents of abuse while Rose Anna was nearby in their home.
McGill argues that force was not an issue in this case because his defense to the allegations was not that the sexual abuse had been consensual. We do not agree. Force was relevant to this case because his prior use of force against the children provided evidence of why the children had never reported the incidents and why they had cooperated with McGill's sexual demands.
We also note that although McGill now objects to the admission of his prior child endangering conviction, substantial testimony was elicited by McGill's own attorney in his direct examination concerning his religious beliefs regarding the necessity of strictly disciplining children, various other incidents for which he had whipped the children, his explanation of why he had originally whipped the children with a belt and later began whipping them with a wooden paddle, the specific events which had led up to the "whipping" which had resulted in his child endangering conviction, an exact description of how he whipped the children, including how he had struck Kendrick between eleven and twelve times during the incident which eventually led to his conviction, and his reaction to Rose Anna's statement after one whipping incident when he had left a bruise on the child's buttocks, namely that since her skin was not "dark," or black like his was, "she would have bruises." McGill's attorney also elicited testimony on direct examination of Rose Anna regarding her belief that McGill whipped the children "too hard" and McGill's practice of taking the children in another room, out of her presence, to whip them. Thus, much time and effort was dedicated by McGill's own attorney to informing the jury of the specifics of the prior conviction and McGill's general practice of whipping the children. It is likely that the evidence of the incident which led to his child endangering conviction for the one whipping incident was not as relevant in the jurors' minds as was the general evidence that he had a practice of whipping both children with a wooden paddle.
McGill also argues that the evidence that Rose Anna had struck Kendrick in the head with a hair brush should have been excluded under Evid.R. 404(B). We do not agree. The language of Evid.R. 404(B) clearly relates to the admission of other acts that were committed by a person to show that such person acted in conformity with those other acts in committing the crime currently being tried. Thus, evidence of Rose Anna's other acts would not be prohibited as argued by McGill because they were not admitted to prove McGill's character or to show that he had acted in conformity with her other acts. We note that this conclusion does not stand for the proposition that a non-party witness's other acts will always be forbidden by Evid.R. 404(B), because a non-party witness's other acts could be admitted to prove his or her own character. SeeState v. Hesson (1996), 110 Ohio App.3d 845, 854-857, 675 N.E.2d 532,538-540 (where defendant in felonious assault case attempted to introduce evidence of a non-party witness's other acts to show that such witness had committed the crime instead of the defendant and appellate court stated that although other acts evidence of a non-party witness could be admissible, the trial court had properly excluded them under the circumstances of that case). Evid.R. 404(B) does not apply, however, to the admission of one person's acts to prove the character and later acts of another person. Thus, McGill's argument is not persuasive.
McGill also argues that the trial court erred in admitting the other acts evidence because such admission violated Evid.R. 403(A).
Evid.R. 403(A) states that relevant evidence "is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." In reviewing matters decided under Evid.R. 403, "[a] reviewing court should be slow to interfere unless the court has clearly abused its discretion and a party has been materially prejudiced thereby." Abbott v. JarrettReclamation Serv., Inc. (1999), 132 Ohio App.3d 729, 748, 726 N.E.2d 511,525, discretionary appeal not allowed (1999), 86 Ohio St.3d 1455,714 N.E.2d 933. We do not believe that the probative value of the evidence involving McGill's prior child endangering conviction and the hair brush incident were substantially outweighed by any unfair prejudice. Thus, the trial court did not err in admitting this evidence.
The seventh assignment of error is overruled.
 VIII.THE TRIAL COURT ERRED BY FALING [sic] TO GRANT APPELLANT'S MOTION FOR GRAND JURY MINUTES.
McGill filed a motion for the production and review of the grand jury transcripts prior to the first trial. The trial court overruled that motion, finding that McGill had set forth only a general need, rather than a particularized need, as required, for the disclosure of the grand jury minutes. McGill filed a "renewed motion" to review the grand jury transcripts prior to the second trial and the trial court overruled it for the same reasons it had overruled his earlier similar motion.
McGill argues that the trial court erred in failing to grant his motion to review the grand jury minutes. He argues that the state's numerous amendments of the alleged dates in the indictment and bills of particulars, Kendrick's surprise testimony at trial that she had been vaginally raped as well as anally raped, and the state's dismissal of two counts before the first trial "suggest that the initial indictment was, by necessity, based on improper information from or by some affiant." (Emphasis added.)
The supreme court has stated:
 Grand jury proceedings are secret, and an accused is not entitled to inspect grand jury transcripts either before or during trial unless the ends of justice require it and there is a showing by the defense that a particularized need for disclosure exists which outweighs the need for secrecy.
State v. Greer (1981), 66 Ohio St.2d 139, 420 N.E.2d 982, paragraph two of the syllabus, citing State v. Patterson (1971), 28 Ohio St.2d 181,277 N.E.2d 201, paragraph three of the syllabus, certiorari denied (1972), 409 U.S. 913, 93 S.Ct. 242. A particularized need for disclosure exists when nondisclosure "will probably `deprive the defendant of a fair adjudication of the allegations placed in issue by the witness's trial testimony.'" State v. Webb (1994), 70 Ohio St.3d 325, 337,638 N.E.2d 1023, 1034, certiorari denied (1995), 514 U.S. 1023,115 S.Ct. 1372, quoting Greer, paragraph three of the syllabus. A general assertion for the purpose of exploring "possible inconsistent statements by witnesses" does not establish a particularized need. State v. Richey
(1992), 64 Ohio St.3d 353, 366, 595 N.E.2d 915, 927, certiorari denied (1993), 507 U.S. 989, 113 S.Ct. 1592.
The question of whether a particularized need exists rests within the sound discretion of the trial court. State v. Lawson (1992),64 Ohio St.3d 336, 345, 595 N.E.2d 902, 910, certiorari denied (1993), 507 U.S. 1007, 113 S.Ct. 1653. A court's discretionary decision will not be overruled on appeal absent an abuse of discretion. As we statedsupra, "[t]he term `abuse of discretion' connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." In re Jane Doe 1,57 Ohio St.3d at 137, 566 N.E.2d at 1184 (quotation omitted).
McGill had to show that nondisclosure of the grand jury minutes probably deprived him of a fair trial and that the trial court abused its discretion by not disclosing such minutes. He failed to do so, however, as he did not cite any specific basis for a finding of particularized need but instead speculated that the grand jury testimony might have contained "improper information" from one of the children. It is clear that mere possibility is insufficient to establish a particularized need. Thus, the trial court did not abuse its discretion in overruling McGill's motion to review the grand jury transcripts.
The eighth assignment of error is overruled.
 IX. O.R.C. 2945.481, AS APPLIED TO APPELLANT UNDER THE FACTS AT BAR, CONSTITUTES UNDUE PREJUDICE IN VIOLATION OF APPELLANT'S RIGHT TO A FAIR TRIAL.
R.C. 2945.481 provides for the taking of a deposition of a child who is less than thirteen years of age in certain circumstances. The statute also provides that the deposition may be videotaped and that the deposition may be admitted into evidence at any proceeding in a prosecution in relation to which the deposition was taken. R.C.2945.481(A)(3), (B).
Prior to the second trial, the state filed a motion with the trial court requesting that videotape depositions of the two children be taken pursuant to R.C. 2945.481. McGill filed a motion in opposition to the state's motion. The trial court granted the state's motion and the depositions were taken. The depositions were then presented at trial as the testimonies of Murrell and Kendrick.
McGill now argues that R.C. 2945.481 violates his constitutional right to confront his accusers. He failed to raise this issue, however, in his motion in opposition to the state's motion.
"As a general rule, a litigant who has the opportunity to raise a claim in the trial court but fails to do so waives the right to raise that claim on appeal." State v. American Bail Bond Agency (1998),129 Ohio App.3d 708, 716, 719 N.E.2d 13, 19, dismissed (1999),84 Ohio St.3d 1470, 704 N.E.2d 578. This waiver doctrine applies even to claims challenging the constitutionality of a statute. Id. Thus, McGill waived this argument by failing to directly raise it in the trial court.
The ninth assignment of error is overruled.
 X. THE TRIAL COURT ERRED WHEN IT FAILED TO PERMIT APPELLANT TO HAVE AN EXPERT OBSERVE THE TESTIMONY OF THE CHILDREN TO ASSESS BEHAVIOR INCONSISTENT WITH CHILD SEXUAL ABUSE.
Prior to the first trial, McGill filed a motion seeking approval to have a psychologist, retained by McGill, observe the testimony of the children at trial to determine whether the children's behaviors were "inconsistent with child sexual abuse." The trial court overruled his motion. At the beginning of the second trial, McGill renewed this motion and the trial court overruled it again. McGill now argues that the trial court erred in overruling this motion.
As we stated supra, evidentiary rulings are within a trial court's discretion. We will not overrule a trial court's ruling unless it abused its discretion.
We will not conclude that the trial court abused its discretion in overruling McGill's motion to have a psychologist view the children's testimonies and then testify as to whether their behaviors were consistent with the behaviors of children who have been sexually abused. McGill's assumptions about what the psychologist's testimony would have been are pure speculation. His attorney did not proffer any such testimony at trial. Without this evidence in the record, we will not conclude that the court was unreasonable, arbitrary or unconscionable in overruling his motion.
The tenth assignment of error is overruled.
 XI. APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF LEGAL COUNSEL.
McGill argues that he was denied effective assistance of legal counsel because his trial attorney failed "to timely object to the leading nature of certain * * * questions put to the alleged child-victims, both on direct and re-direct examination by the State." He asserts that because his attorney failed to object to this testimony, "there was testimony beyond preliminary matters which the State was able to adduce and in a manner that suggested undue credibility." McGill does not, however, provide us with any specific examples of testimony given by the children which he believes was objectionable.
"To obtain a reversal of a conviction on the basis of ineffective assistance of counsel, the defendant must prove (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome of the proceeding."State v. Madrigal (2000), 87 Ohio St.3d 378, 388-389, 721 N.E.2d 52, 64, motion for reconsideration denied (2000), 88 Ohio St.3d 1428,723 N.E.2d 1115, citing Strickland v. Washington (1984), 466 U.S. 668,687-688, 104 S.Ct. 2052, 2064; accord State v. Bradley (1989),42 Ohio St.3d 136, 538 N.E.2d 373, paragraphs two and three of syllabus, certiorari denied (1990), 497 U.S. 1011, 110 S.Ct. 3258. A defendant's failure to satisfy one prong of this test negates a court's need to consider the other prong of the test. Madrigal, 87 Ohio St.3d at 389,721 N.E.2d at 64, citing Strickland, 466 U.S. at 697, 104 S.Ct. at 2069.
"Prejudice," as required by the second prong of the test, has been defined as "a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." Bradley, at paragraph three of the syllabus. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." State v.Bays (1999), 87 Ohio St.3d 15, 27, 716 N.E.2d 1126, 1140, certiorari denied (2000), — U.S. ___, 120 S.Ct. 1727.
In reviewing a claim of ineffective assistance of counsel, we "`must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" State v. Mason (1998),82 Ohio St.3d 144, 157-158, 694 N.E.2d 932, 949, certiorari denied (1998), 525 U.S. 1057, 119 S.Ct. 624, citing Strickland,466 U.S. at 689, 104 S.Ct. at 2065. Thus, "we will not second-guess trial strategy decisions." Mason, 82 Ohio St.3d at 157, 694 N.E.2d at 949.
McGill's attorney's decision to not object to leading questions directed to the children was likely a trial strategy decision. McGill himself admits that with young children, it is sometimes necessary to focus their testimonies with leading questions. This is especially true when young children are testifying about subjects that are uncomfortable to them, such as incidents of sexual abuse. In reviewing the videotape depositions of the children's testimonies, it is clear that the children were uncomfortable testifying about how McGill had abused them. This was especially true with Kendrick, who did not want to testify and ultimately described the abuse, in part, by circling genitalia on anatomically correct pictures of a female child and adult male. We will not second-guess McGill's counsel's trial strategy decisions. Further, after reviewing the children's testimonies, we cannot conclude that there is a reasonable probability that, had McGill's attorney objected to the state's leading questions, the result of the trial would have been different.
The eleventh assignment of error is overruled.
 XII. CUMMULATIVE [sic] ERRORS COMMITTED IN THE TRIAL HEREIN, EVEN IF INDIVIDUALLY INSUFFICIENT TO CONSTITUTE REVERSIBLE ERROR, IN THE AGGREGATE DEPRIVED APPELLANT OF HIS FUNDAMENTAL RIGHT TO A FAIR TRIAL.
McGill argues that the "aggregate events" at the second trial indicate that he deserves a new trial.
"Although violations of the Rules of Evidence during trial, singularly, may not rise to the level of prejudicial error, a conviction will be reversed where the cumulative effect of the errors deprives a defendant of the constitutional right to a fair trial." State v.DeMarco (1987), 31 Ohio St.3d 191, 509 N.E.2d 1256, paragraph two of syllabus.
In reviewing the entire record, we do not find multiple instances of error which together deprived McGill of a fair trial. Thus, McGill's argument is not persuasive. See State v. Garner (1995), 74 Ohio St.3d 49,64, 656 N.E.2d 623, 637, certiorari denied (1996), 517 U.S. 1147,116 S.Ct. 1444.
The twelfth assignment of error is overruled.
The judgment of the trial court will be affirmed.
 __________________ WOLFF, J.
BROGAN, J. and YOUNG, J., concur.